George P. McEntire et al., appellees, v. Chicago, Rock Island & Pacific Railway Company, appellant.

Filed October 30, 1915. No. 18057.

Opinion on motion for rehearing of case reported, *ante,* p. 92. *Rehearing denied.*

Barnes, J.

A motion for rehearing has been filed in this case, and on the argument of appellees in support thereof they contend that the court in its former opinion (*ante,* p. 92) had placed a wrong construction on the act providing for

McEntire v. Chicago, R. I. & P. R. Co.

a uniform bill of lading. The essentials of that bill are as follows: "The carrier  *  *  *  of any of the property herein described shall be liable for any loss thereof or damage thereto, except as hereinafter provided.  *  *  * For loss, damage, or delay caused by fire occurring after forty-eight hours  *  *  *  after notice of the arrival of the property at destination  *  *  *  has been duly sent or given, the carrier's liability shall be that of warehouseman only.  *  *  *  Property not removed by the party entitled to receive it within forty-eight hours  *  *  * after notice of its arrival has been duly sent or given may be kept in car, depot, or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only."

In support of their contention they cite *Gary Bros. & Gaffke Co. v. Chicago, M. & P. S. R. Co.*, 49 Mont. 524, and attempt to show that the decision in that case should rule our decision in the case at bar. We have examined that case and are of opinion that it can easily be distinguished from the facts in this case. In the Montana case there was a shipment of two car-loads of potatoes to be carried safely to Butte, Montana, and there delivered to F. C. Downing upon the payment of freight charges thereon. On the morning of October 26, 1911, Downing was notified of the arrival of the cars at Butte. He thereupon came to the office of the railroad company and requested that they be set out upon its delivery track. This was done. He then, in company with a prospective purchaser, inspected the potatoes, but allowed them to remain in the car on the delivery track. It does not appear that he took charge of the shipment. On the 27th he informed the company's agent that the potatoes had been frozen during the night. It is apparent that in that case there was no complete delivery of the potatoes, and they were frozen while still in charge of, and in the hands of, the railroad company. It is not claimed that Downing had paid the freight charges, and it is apparent that all he did was to inspect the potatoes and ascertain their condition. He left them

in the possession and charge of the railroad company, and on that night, or the following morning, they were frozen.

In the case at bar, however, the railroad company notified the consignee that the two cars of furniture had arrived at their place of destination. He requested that the cars be set out upon the unloading track, which was done. It is claimed, however, that the car which was destroyed by fire was opened by him through mistake, and that he never intended to accept delivery of that car. The facts shown by the record are that the consignee first opened the car which burned, and found that it was loaded with mattresses. He desired to unload the iron beds first, and proceeded to that car with the drayman and unloaded it. They worked at unloading all afternoon, in the meantime leaving the door of the other car open from 12 to 18 inches until about 6 o'clock in the evening. When night came plaintiff's secretary directed that a padlock be procured and placed upon the car, the other car having been unloaded, which was done by one of the employees. He called up the agent of the railroad company, who had left the office, and, having ascertained that fact, he asked the telegraph operator to seal the car. When informed that he could not do so, he asked if it was all right for him to place a lock on the car. The operator answered that it was all right so far as he was concerned; that he had no objections. The consignee did not attempt to deliver the key to the railroad company or any of its agents or employees, but retained it in his own possession. It thus appears that the consignee had accepted the delivery of the cars, had full charge of them, had unloaded one of them, had placed a lock purchased by himself on the other, and retained the key himself. The railroad company had parted with possession of the contents of the car before the fire occurred. The provisions of the uniform bill of lading quoted above have no application to a case where the control of the goods has passed to the consignees. As to the origin of the fire, the record is unsatisfactory; but, since it was first discovered in the interior of the car, it may be reasonably inferred that it was occasioned by leaving the car open

during the time the consignee was unloading the other car, and that it would not have happened if the seal had remained unbroken and the door closed.

As we view the record, our former opinion was right, and the motion for rehearing is therefore

OVERRULED.

SEDGWICK, J., dissenting.

The question to be determined is whether the railroad company was liable as a common carrier or as warehouseman only. The contract, which is set out in the majority opinion, determines the question. It provides in what cases the liability shall be limited to that of warehouseman: First. If fire occurs after 48 hours after notice of arrival, the liability shall be that of a warehouseman only. This fire did not occur after 48 hours. Second. It provides that, if the property is not removed within 48 hours after notice of its arrival, after that time the liability will be only that of warehouseman. With these two exceptions the liability is that of a common carrier by the plain terms of the contract of shipment. The railroad company is permitted by law to make a reasonable contract as to the time allowed for removal of property from its cars after notice of arrival at its destination. The contract seems to be reasonable, and ought to be enforced as against the defendant company. The consignee has 48 hours in which to remove the property after notice of its arrival. If he does not remove it within that time he may still have the use of the car, but must pay demurrage, and the company's liability will be that of a warehouseman after the 48 hours have expired. The owner of the property may open the car for inspection, as in the Montana case cited, or for any other purpose. The liability of the company, by the express terms of the contract, does not depend upon opening the cars, or upon handling the goods, or unlocking or locking the car, or upon any other condition than removal of the property within the 48 hours. The discussion of such matters in the majority opinion seems to me to be wholly irrelevant. Of course, the owner of the property would be responsible for his own negligence which should

cause the loss or injury of the property. The majority opinion does not place the decision upon any consideration of negligence of the plaintiff which did or could cause the loss of the goods, but, as it seems to me, misconstrues a very plain contract.

Rose, J., joins in this dissent.