YUILLE-MILLER CO. *v.* CHICAGO, INDIANAPOLIS & LOUIS-
VILLE RAILWAY CO.

1. CARRIERS—SALES—DELIVERY—INSPECTION.
   An inspection of a car load of plums, made by the consignee without authority of the carrier, and without paying a sight draft to which the bill of lading of the plums was attached, was not a delivery, where the consignee thereafter rejected the goods as imperfect.

2. SAME—ESTOPPEL—ACCEPTANCE—DELIVERY.
   Where plaintiff received a letter and telegram from the consignee, plainly indicating that there had been no delivery or acceptance of the plums, and demanding a reduction of $50 in the price, and plaintiff neglected to inquire of the bank handling the draft for the purchase price as to whether it had been paid, the defendant is not estopped to deny delivery, in an action for consequent loss, by reason of a telegram

to its agent that the car had arrived and been delivered, being merely a reply to the telegram giving information of shipment and directions to notify consignee.

Error to Kent; Perkins, J. Submitted November 29, 1910. (Docket No. 162.) Decided December 22, 1910.

Assumpsit in justice's court by Yuille-Miller Company against the Chicago, Indianapolis & Louisville Railway Company, for failure to carry and deliver a car load of plums. A judgment for defendant directed by the court on appeal to the circuit, is reviewed by plaintiff on writ of error. Affirmed.

*Cleland, Heald & Montgomery*, for appellant.

*Kleinhans & Knappen*, for appellee.

HOOKER, J. The plaintiff, a fruit dealer, shipped a car of plums from Shelby, Mich., to Indianapolis, Ind., upon an order received by it from Neumann & Co., dealers in the latter city. It was sent via Pere Marquette and defendant's lines. The car started from Shelby on August 29, 1908. The original bill of lading recited that the car was received from the plaintiff and was consigned to itself, at Indianapolis, Ind. On the same day plaintiff drew a draft on Neumann & Co. through a bank at Indianapolis, for $368.40, the price agreed on. Attached to this draft was an order to the defendant, directing it to deliver the car of fruit to John W. Neumann & Co., on surrender of the order.

The principal place of business of the plaintiff was at Grand Rapids, and it received the bill of lading from Shelby on August 30, 1908. It forwarded the same duly indorsed to its bank at Indianapolis, with the request that it be substituted for the delivery order sent to the bank with the draft the day before. Neither the waybill nor the bill of lading contained any direction allowing inspection. The car arrived on September 1st, and was placed

on the hauling and unloading track where such cars were usually placed. It was a sealed car. Having no directions nor information as to the delivery of this car to any one other than the plaintiff, the cashier of the railroad company made inquiries of the local fruit dealers, and learned that Neumann & Co. were looking for such a car and they were notified that the car was in the yard ready for delivery. They said they would look after it. Neumann's agént broke the seal of this car without the consent or knowledge of the railroad company and examined the fruit. Soon after, defendant's yardman found, reported, and replaced the broken seal, though not until Neumann had, without the knowledge or consent of the railroad company, made a more careful inspection on the morning of September 2d. On September 1st Neumann wrote plaintiff as follows:

"East Street and Union tracks,
"INDIANAPOLIS, September 1, 1908.
"YUILLE-MILLER COMPANY,
"Grand Rapids, Michigan.
"*Gentlemen:* ·
"We are rather disappointed in quality car plums F. G. E. 18229. This stock was nothing compared to previous shipments. Not alone was the stock rather soft and showing more or less decay, but the baskets were poorly filled, some lacking an inch or two. We hope our good fortune in making this purchase on advancing market did not affect the quality or packing, though what you thought would make us rich will probably enable our buying an extra smoke, but nothing more than that. Please ascertain from the local agent at once the freight and refrigeration charges, also the minimum weight. We believe that there is an overcharge in these shipments. Wired you today with reference to small car to be shipped tomorrow. If you have some good stock and prices are not too high, we will be glad to place an order.
"Yours truly,
"JOHN W. NEUMANN & COMPANY."

Mr. Yuille testified that he thought he received this letter on the morning of September 2d and that about noon of that day he received the following telegram:

" Time filed, 10:15 a. m. K. September 2, 1908. Yuille-Miller Company, Grand Rapids, Michigan. Blue plums all showing considerable decay, loaded over ripe, will lose money. Wire bank reduce draft $50. You should not have shipped such. John W. Neumann & Company."

After receiving this telegram plaintiff started a tracer for the car through the Monon Agency at Grand Rapids. The following are the telegrams:

" Grand Rapids, Michigan, September 2, 1908.
"A. J. O'Reilly, General Agent, C. I. & L. Railway Company,
    " Indianapolis, Indiana.
" From Shelby, Mich., August 29th, in our care at Michigan City F. G. E. 18229; plums billed order Yuille-Miller Company, notify Neumann & Company, please wire date of arrival and delivery. W. T. Webster."

    " Indianapolis, Indiana, September 2, 1908.
"W. T. Webster, Commercial Agent, C. I. & L. Railway,
    " Grand Rapids, Michigan.
" 18229 plums arrived and delivered yesterday morning. A. J. O'Reilly, 4:11 p. m."

After receiving this last telegram, but when does not appear, plaintiff answered Neumann's telegram, refusing a concession of $50. Yuille stated that he relied on the telegram received from the Monon Agency, and that otherwise he would have allowed it. Neumann refused to pay the draft or have anything to do with the car. The defendant asked through the Pere Marquette Railway for a disposition of the car, and was directed to deliver to Hind & Fuchs, commission men, which it did. Plaintiff received net $151.67 from a sale of the fruit. The trial judge denied a proposed amendment to the declaration alleging an estoppel to deny delivery of the car to Neumann, refused to consider the estoppel, and directed a verdict for defendant on the ground that there was no evidence of delivery by the railroad company. Plaintiff has appealed.

**Delivery.** The important questions in the case relate to

the alleged delivery of the car to Neumann and the estoppel. Counsel for plaintiff claim that:

(1) Permitting Neumann & Co. to examine or inspect the fruit was a delivery of the same.

(2) That if it was not, the defendant is estopped to deny delivery by its telegram announcing delivery.

(3) If there was a delivery or its equivalent, without the order or bill of lading, defendant's liability follows:

It is manifest that Neumann & Co. never meant to accept these plums and that the railroad company never meant to deliver them. Counsel's claim seems to be that because the railroad company omitted to place a lock on the car, according to its alleged custom, where cars were "sent bill of lading" and informed Neumann that the car was on the siding, they intended to turn the car over to Neumann, and that his inspection without other authority constituted an acceptance. It seems to us that this cannot be said to constitute a delivery. Neumann's man was given no authority to break the seal by the railroad company, and his principal undoubtedly knew that the payment of the draft was a prerequisite to any right to the plums. No right to them was ever asserted by Neumann. The failure to lock the car has no particular significance in our judgment. Counsel seem to think it equivalent to authorizing Neumann to take the car of plums without paying for it. It does not follow that it was a delivery, for he did not take them. Evidently he knew better than that, and while his man without authority broke the seal and looked at the plums, and Neumann looked at them later, he never signified by act or deed an intention to take them, and the defendant was ignorant of what was done. We must hold that the car was at all times in the custody of the railroad company, and so long as the plums were neither taken nor injured by Neumann's unauthorized act, the plaintiff could not complain.

**Estoppel.** Plaintiff's claim of estoppel is based upon some telegrams, etc. We will state the situation in detail: The car arrived, and was set in on the delivery

track at Alabama street on September 1st. On the same day, after an unauthorized examination by Neumann's agent, the letter of September 1st was written by Neumann. It indicates arrival and examination, but neither delivery nor acceptance. It appears to have been received by plaintiff September 2d. On the afternoon of September 2d the telegram asking a reduction of $50 was received, indicating that it had not yet been accepted. Thereupon a tracer was sent for the car by plaintiff. It was sent through the Monon City Agency, defendant's road being often called "The Monon Route." At some time the same day, September 2d, the following telegram was sent:

"Grand Rapids, Michigan, September 2, 1908.
"A. J. O'Reilly, General Agent, C. I. & L. Railway Company,
"Indianapolis, Indiana.
"From Shelby, Mich., August 29th, in our care at Michigan City, F. G. E. 18229; plums billed order Yuille-Miller Company, notify Neumann & Company, please wire date of arrival and delivery. W. T. Webster."

Plaintiff's manager was in the country for some hours on September 2d, and returned to his place of business after office hours. He found the following telegram in reply to the one last quoted:

"Witness continuing: Mr. Webster is the commercial agent for the Monon route here at Grand Rapids in charge of the district in this territory. That telegram that you now show me was received in reply to this Exhibit F, which you have just read. (Telegram offered in evidence, marked 'Exhibit G.')
"Mr. Heald (reading):

"'Indianapolis, Indiana, September 2, 1908.
"'W. T. Webster,
"'Commercial Agent, C. I. & L. Railway,
"'Grand Rapids, Michigan.
"'18229 plums arrived and delivered yesterday morning. A. J. O'Reilly, 4:11 p. m.'"

It apparently was not in reply to the tracer, but as Mr. Yuille himself testified was in reply to the telegram giving

information of shipment and directions to notify Neumann, sent probably before Neumann's letter or telegram had been received. Plaintiff's claim is that he relied on this statement, that car was delivered on September 1st, and did not accept the $50 reduction proposition; which he would have done had he not been informed that the car was delivered to Neumann September 1st.

Late on September 2d (4:55 p. m.) Neumann sent the following telegram:

"Telegram marked 'Exhibit D' is as follows:

"'Indianapolis, Indiana. Time filed, 4:55 p. m. September 2, 1908. Yuille-Miller Company, Grand Rapids, Michigan. No answer our telegram. Unless deduction granted today we decline acceptance car. John W. Neumann & Company.'"

Plaintiff's manager said that he did not recall getting two telegrams on his late return to his office September 2d, and that he probably received it the next morning, but elsewhere.

Apparently the receipt of this telegram aroused suspicions that there had been no delivery and acceptance of this car, for he then took up the matter with Mr. Webster. Yuille says that "it was not because he was not satisfied with what Webster had reported with regard to the delivery of the car that we took it up with him." He said he was satisfied that the car was delivered, but the Pere Marquette was inquiring after its disposition. If he was satisfied of its delivery to Neumann and the payment of the draft, it would have been natural for him to have given that information to the Pere Marquette Company, but instead he "took it up with Webster again, and Webster telegraphed again." It should be noted that Yuille testified that the Pere Marquette informed him on the morning of the 3d that the car was refused. He then saw Webster who telegraphed, and later, or early on the 4th, he received the following:

"Indianapolis, Indiana, September 3, 1908. W. T. Webster, Grand Rapids, Michigan, 18229 plums unde-

livered, still on hand, refused. A. J. O'Reilly, 5:07 p. m."

Plaintiff immediately wired:

"Deliver car * * * to Hind & Fuchs without bill of lading."

To recapitulate: Plaintiff shipped car on August 29th. On September 1st the railroad company delivered it on siding sealed. On September 2d, correspondence by mail and telegram was received by plaintiff, plainly showing that car had not been delivered and accepted, and would not be unless the bill was reduced. On September 2d the telegram answering tracer was received after office hours by plaintiff. On the same day the Pere Marquette wired the plaintiff that car was refused, and asked for disposition of car; *i. e.* (as we understand), what should be done with it. September 3d, in answer to Webster's wire, he received the same information. At no time did plaintiff receive or ask any information from the bank as to draft or bill of lading.

Plaintiff has not offered his telegram or letter refusing to take the reduced price offered. He did not receive the first telegram until his return after office hours, on the 2d. That night or the next morning, early, he received Neumann's ultimatum, both clearly showing that the car had not been accepted, and consequently that draft could not have been paid or car turned over to Neumann. It is manifest that a refusal to accept after the receipt of this information, upon the theory that the car had been delivered on September 1st, would have been in bad faith. Not only has he failed to show when or what he replied to Neumann, but his testimony leads to the suspicion that it was after he had received all of the telegrams. He said, alluding to the reply to the notification:

"That telegram that you now show me was received in reply to this Exhibit F, which you have just read. * * * The contents of that telegram were communicated to me late in the afternoon or evening of September 2d. I had

not at that time replied to the telegraph request of John W. Neumann for reduction of $50 on the car. Subsequently I did reply to that telegram. I did not grant him that allowance of $50 which he asked. I relied in that refusal on the telegram received from the railroad company which is marked 'Exhibit G.' We had asked for arrival and delivery. They had replied that the car was delivered; therefore it was clearly no interest of mine to make any allowance to consignee; thinking, that if the car had been delivered, our draft must have been paid.'"

He does not say that he was misled. If this was not a cold-blooded statement that he proposed to speculate upon misinformation which should not and could not have misled him, it is certainly far from proof that in reliance upon an honest and justifiable belief that the information was true, he had been induced to insist on full payment upon the conviction that his draft had been paid. If he believed it to have been paid there was no necessity of saying or doing anything. If he did not believe it had been paid, there could be no estoppel.

It is unnecessary to discuss other questions.

The judgment is affirmed.

OSTRANDER, MOORE, MCALVAY, and BROOKE, JJ., concurred.