tax district, being the built-up portion of the city for the benefit of which the system was installed.

[2] It is not competent for the board of water and sewer commissioners to question in this proceeding the right of the relator to the payment of its claim; that right is conclusively established by the judgment, until it is in some manner set aside or vacated. If the audit and allowance of this claim was collusive and fraudulent, as claimed by this board, it is probably within the power of any member of the board who is a taxpayer to maintain an action as provided by statute to have this judgment vacated. Until that is done, the courts in all proper proceedings for its collection and enforcement must assume that the judgment conclusively determines the legal rights of the relator in respect to its claim.

We conclude that the order appealed from must be affirmed, with costs. All concur.

---

(149 App. Div. 330.)

### EARNEST v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Fourth Department.    March 6, 1912.)

1. CARRIERS (§ 177*)—CARRIAGE OF GOODS—LIABILITY OF INITIAL CARRIER.

In the absence of statute, an initial carrier may by contract make itself liable for the delivery of goods accepted for transportation to a point beyond its line; but, unless its liability is so extended, its obligation is terminated by safe delivery to the first connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–791, 803; Dec. Dig. § 177.*]

2. CARRIERS (§ 72*)—CARRIAGE OF GOODS—INSPECTION.

Where the right of the shipper and carrier are not regulated by agreement, the right of the consignee to inspect exists.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 243–250, 258–261, 266–269; Dec. Dig. § 72.*]

3. CARRIERS (§ 177*)—CARRIAGE OF GOODS—BILL OF LADING.

The bill of lading, providing that no inspection of goods shall be allowed unless permission is given approved by the Interstate Commerce Commission as in compliance with the Carmack Amendment of June 29, 1906 (Act June 29, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), to the Hepburn Act of February 4, 1887 (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), providing that the initial carrier of goods from a point in one state to a point in another shall be liable for all injuries by connecting carriers, while making the initial carrier liable for any damage by reason of the connecting carrier's breach of the provision prohibiting inspection, does not extend the carrier's liability beyond the scope of the amendment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–791, 803; Dec. Dig. § 177.*]

4. CARRIERS (§ 177*)—CARRIAGE OF GOODS—CONVERSION.

A carrier of goods does not become liable for conversion because allowing an unauthorized inspection by the consignee.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–791, 803; Dec. Dig. § 177.*]

5. CARRIERS (§ 177*)—CARRIAGE OF GOODS—INSPECTION.

The initial carrier transporting apples from one state to another issued the uniform bill of lading, providing that no inspection should be allowed unless permission was indorsed, that was approved by the Interstate

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Commerce Commission as in accordance with the Carmack Amendment of June 29, 1906 (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), to the Hepburn Act of February 4, 1887 (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), providing that the initial interstate carrier should be liable for all injuries by the connecting carrier. The connecting carrier allowed an unauthorized inspection of the goods, which were not injured by the inspection, though the consignee refused to accept them in accordance with its oral contract of purchase. *Held*, that the initial carrier was not liable for conversion; there being no damage to the goods.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 775–791, 803; Dec. Dig. § 177.*]

Appeal from Trial Term, Steuben County.

Action by Euretta Earnest against the Delaware, Lackawanna & Western Railroad Company. From a judgment for defendant, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, and ROBSON, JJ.

Monroe Wheeler, for appellant.

Halsey Sayles, for respondent.

SPRING, J. On the 2d day of November, 1908, the plaintiff delivered to the defendant, a common carrier, at its station in Bath, N. Y., 240 barrels of apples, consigned to the order of the First National Bank of Wayland, N. Y., and destined for Chicago, Ill. The contract or bill of lading made by the defendant was delivered to the plaintiff, and the same was attached by the latter to a sight draft upon Train, Letterman & Ford, of Chicago, Ill., for $660, payable to the order of the said First National Bank of Wayland, N. Y.; and this draft was, with the bill of lading, sent through the bank for collection. An oral contract for the purchase of said apples had been made prior to their delivery to the defendant by an agent of Train, Letterman & Ford, whereby he agreed on behalf of said company to purchase said apples at $2.75 per barrel. No payment or written memorandum was made of such purchase.

The bill of lading provided:

"Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper. * * * The carrier or party in possession of any of the property herein described shall not be liable for any loss thereof, or damage thereto except as hereinafter provided."

The contract further provided that the defendant should not be liable for loss, damage, or injury not occurring on its own road, "except as such liability is or may be imposed by law."

Before the apples were shipped, a few barrels of them were inspected by the agent of the Chicago firm. They arrived in Chicago on the 6th of November, and the yard agent of the railroad company erroneously entered the shipment as if there were no restrictions as to inspection in the bill of lading. The firm of Train, Letterman & Ford was notified by the defendant of the arrival of the apples in compliance with the direction contained in the bill of lading. It sent

two employés to the freight yard of the defendant, and the yardmaster unsealed the car, and these employés, with his permission, inspected about 16 barrels of these apples, and thereafter resealed the car. The Chicago company refused to receive the apples, and the plaintiff commenced this action of trover against the defendant. There is no proof that the apples were damaged, or that there was any loss or injury to the plaintiff by reason of the inspection made by Train, Letterman & Ford in violation of the agreement set forth in the bill of lading.

The plaintiff founds her right to recover upon a clause in an act of Congress regulating commerce between the states, and which is designated as the Carmack Amendment to the Hepburn Act (approved February 4, 1887), and which amendment is chapter 3591 and became a law June 29, 1906 (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]). Section 20 of the original act was amended by section 7 of the amendatory enactment, and, among the provisions added by the amendment, is the following:

"That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed; provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law."

There is an added clause entitling the common carrier issuing the bill of lading to recover of the carrying company "on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage or injury as it may be required to pay to the owners of such property."

[1] Irrespective of this amendment, the initial carrier might by contract make itself liable for the delivery of property accepted by it for transportation to the point of destination wherever in transit the loss might occur. Unless it did so extend its liability, its obligation to the shipper terminated upon the safe delivery of the goods to the first connecting carrier on the route. Atlantic Coast Line v. Riverside Mills, 219 U. S. 186, 196, et seq., 31 Sup. Ct. 164, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

The effect of the Carmack Amendment as to interstate shipments is to make the connecting carriers the agents of the initial carrier, the same as if it had contracted for through carriage to the point of destination. Same case, 219 U. S. pages 196, 200, et seq., 31 Sup. Ct. 164, 168, 55 L. Ed. 167, 31 L. R. A. (N. S.) 7.

This act made a radical change in the obligation imposed upon the first carrier, and Congress defined the extent of the liability which it incurred for loss of property received by it and lost in transit beyond its own line. The section provides that the carrier accepting the property for interstate shipment "shall be liable * * * for any *loss, damage* or *injury* to such property" en route.

[2, 3] The act itself did not provide for any specific bill of lading or shipping contract. Representatives of the common carriers and transportation companies and of the shippers, after many conferences, agreed on a formal bill of lading to make effective in equity to all parties the amendment adverted to, and this uniform bill of lading, so called, was on June 22, 1908, approved by the Interstate Commerce Commission. In the Matter of Bills of Lading, 14 Interst. Com. R. 346.

The bill of lading so approved contained this provision:

"Inspection of property covered by this bill of lading will not be permitted unless provided by law or unless permission is indorsed on this original bill of lading or given in writing by the shipper."

The Carmack Act contained no provision prohibiting the inspection of property at the point of destination. Where the right of the shipper and carrier are not regulated by agreement, the right of the consignee to inspect exists. Hutchinson on Carriers (3d Ed.) § 733; Brand v. Weir, 27 Misc. Rep. 212, 214, 57 N. Y. Supp. 731. And there was no inhibition of that rule by the act of Congress. The matter was adjusted by agreement, and the parties to this action in the bill of lading, we may assume, were endeavoring to comply with the agreement of the shippers and carriers and approved by the Interstate Commerce Commission, and in furtherance of the provisions of the Carmack Amendment quoted. The use of this bill of lading is not obligatory upon either shipper or carrier. If it is adopted as the agreement of the parties, and loss or damage occurs by reason of a breach of any of the provisions contained in it through the fault of a connecting carrier, the initial carrier must stand the loss. The bill of lading did not extend the liability beyond the scope of the Carmack Amendment.

[4, 5] An initial carrier is not made liable for conversion because a company having the custody of the property permits it to be looked at either by the consignee or any one else. If an examination of the property in violation of the agreement between the parties causes damage to it, then the first acceptor may be made to pay for that damage.

In the present case the evidence undisputedly establishes that the carrier at the point of destination permitted an inspection of the apples, and hence the defendant, in pursuance of the Carmack Act, must respond for whatever loss resulted to the plaintiff by the breaking of the agreement. The extent of the loss or injury the plaintiff must prove. There is no claim that the apples were injured by the inspection, or that the refusal of the Chicago firm to accept the apples, which they were not legally bound to purchase, was by reason of this inspection. There is not the slightest proof of any loss or damage or injury to the fruit. On the contrary, the proof shows they were not injured at all by the inspection. The railroad company retained the actual possession of the property. Its dominion over it was not surrendered, and the plaintiff was promptly notified by Train, Letterman & Ford that they did not wish the apples, and plaintiff refused to receive them from the railroad company. It knew possession of the

apples was not to be given to the Chicago firm until it had honored the draft upon it. The railroad company did violate its agreement, and the measure of its liability for that breach was the loss or injury to the apples.

Without regard to the Carmack Amendment and the approval of the uniform bill of lading, the courts have held that conversion did not lie for an unauthorized inspection of goods at the point of destination. Dudley v. Chicago, M. & St. P. R. R. Co., 58 W. Va. 604, 52 S. E. 718, 3 L. R. A. (N. S.) 1135, 112 Am. St. Rep. 1027; Sloan v. Carolina Central R. R. Co., 126 N. C. 487, 36 S. E. 21; Yuille-Miller Co. v. Chicago, I. & L. Ry. Co., 164 Mich. 58, 128 N. W. 1099. See, also, Wamsley v. Atlas S. S. Co., Ltd., 168 N. Y. 533, 61 N. E. 896, 85 Am. St. Rep. 699.

In the case first cited, apples were inspected at the point of destination. They were in barrels, consigned to the shipper, and were taken from the car and placed on the wagon of one Sharp, who was notified of their arrival, in compliance with the directions of the plaintiff shipper. After they were inspected by an agent of Sharp, they were replaced in the car from which they had been removed, and Sharp refused to accept the apples. Sharp did not produce the bills of lading, or show any right to the possession of them. The railroad company permitting the inspection was sued in conversion, and the Court of Appeals of West Virginia held that conversion would not lie. The court, in commenting on the inspection and the effect of it, used this language at page 607 of 58 W. Va., at page 719 of 52 S. E. (3 L. R. A. [N. S.] 1135, 112 Am. St. Rep. 1027):

"Sharp's agent was simply permitted to enter the cars, set barrels out in his wagon, open them, and examine the apples. Then they were put back in the car and it was resealed by the agent. It may be true that he had no right to do so, and that the defendant did wrong in permitting the inspection, no evidence of title or right to possession having been shown, but it is a non sequitur, to say, upon these facts, there was a delivery. It may have been an unauthorized act of dominion over the property; but whose act was it? Clearly that of the railroad company, for the property was still in its actual and legal custody. It never parted with its possession. Not every wrongful act on the part of a common carrier authorizes an action against it for a conversion. Where goods intrusted to a common carrier are injured only, the owner's remedy is for damages for the injury, not their value. * * * What is the nature of the plaintiff's injury here? Inspection did not injure the property, so far as disclosed. It prevented the consummation of a sale to Sharp. Can that constitute the basis of an action for the value of the property? That it could not is so obvious that no such claim is made, and this branch of the contention is founded upon the extremely fanciful theory of a technical delivery, for which no authority has been found."

But under the Carmack Act the limit of the loss which the shipper has suffered is prescribed. If the property is sold without authority so that the carrier asserts title in hostility to the claim of the shipper, an action of conversion may be maintained. No such deprivation of ownership is shown in this case.

The judgment should be affirmed, with costs.

Judgment affirmed, with costs. All concur.