CHRISTIAN F. BOBZEIN, as Trustee in Bankruptcy of MARTIN J. SPITZER, Respondent, *v.* NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, April 30, 1919.

Carrier — interstate commerce — negligence — liability of initial carrier for failure of final carrier to ice or re-ice car loaded with fruit shipped from one State to another — agreement by final carrier to re-ice constituting an obligation under the original contract of shipment — placing of car on team track by final carrier and inspection of fruit by representative of consignee not a delivery so as to relieve initial carrier from liability — right of consignee to reasonable time in which to remove goods.

Where in an action against the initial carrier to recover for the value of a carload of peaches shipped from one State to another under a bill of lading providing that the car should be re-iced to full capacity at a specified station on the line of the final carrier, and that the consignee should have forty-eight hours after notice of the arrival of the car within which to remove the peaches, it appears that the car was not re-iced at

the station designated; that on the day after its arrival the consignee's inspector examined the peaches and found them ripe but marketable with very little ice in the car, and ordered the final carrier to re-ice the same; that the car had been placed by the final carrier on the team track on the afternoon of its arrival; that two days after ordering the car to be re-iced it was found with the bunkers empty and the peaches soft and overheated and the consignee notified the railroad company that it refused the car because the peaches had gone down as a result of not having been re-iced, a judgment in favor of the plaintiff should be affirmed.

Under the provisions of the Interstate Commerce Act, as amended, an initial carrier may be held liable for damages resulting from the failure of the final or connecting carrier to properly ice or re-ice a car loaded with fruit.

The agreement by the final carrier to re-ice the car was not a new and independent agreement but merely an agreement to carry out an obligation under the contract of shipment.

The initial carrier having failed to re-ice the car at the designated point, cannot be heard to say that it was not liable to re-ice at all. It was bound to exercise the care and diligence that the character of the goods required and is liable for the damages caused by a failure to ice or by insufficient icing.

The placing of the car on the team track and the inspection of the peaches by the consignee's agent who found them in marketable condition did not relieve the final carrier from liability.

Independent of any agreement a consignee has a reasonable time after notice of the arrival of goods in which to remove them, and during such time the carrier holds the goods as a carrier and its duty is not reduced to that of a warehouseman until after the expiration of such reasonable time.

It was not error for the trial court to hold as a matter of law that there had been no actual delivery of the car to the consignee prior to the agreement of the final carrier to re-ice it.

The inspection of the peaches by the representative of the consignee did not constitute a delivery of the car.

APPEAL by the defendant, New York Central Railroad Company, from a judgment of the County Court of Niagara county in favor of the plaintiff, entered in the office of the clerk of said county on the 5th day of April, 1918, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day, denying defendant's motion for a new trial made upon the minutes.

*Locke, Babcock, Spratt & Hollister* [*J. E. Kelly* of counsel], for the appellant.

*Dempsey, Tuttle, Rice & Fogle* [*S. Wallace Dempsey* of counsel], for the respondent.

HUBBS, J.:

This action was brought by Christian F. Bobzein, as trustee in bankruptcy of Martin J. Spitzer, to recover the value of a carload of peaches. On September 6, 1915, Spitzer shipped a car containing peaches from Burt, N. Y., to Detroit, Mich., consigned to A. Jacobs & Co., to be sold on commission. The shipment was made over the defendant's line as initial carrier and over the Michigan Central as final carrier. The car was iced when it left Burt and the bill of lading provided that it should be re-iced to full capacity at Montrose, a station on the Michigan Central about seventy-five miles from Burt. The icing charges were advanced by the shipper.

The car arrived in Detroit on time on the morning of September eighth. At that time the peaches were in good condition. A. Jacobs & Co., the consignee, was notified by mail of the arrival of the car and its inspector, Morgan, went into the car and made an inspection about eleven A. M. on September ninth. He found that there was very little ice in the bunkers; that the peaches were ripe, but not over-ripe; that they were in good marketable condition. It appears that if they had been sold at that time they would have brought the market price. The car had been placed by the railroad company on the team track on the afternoon of September eighth, the day it arrived in Detroit.

The jury would have been justified in finding that at about eleven A. M. on September ninth the inspector, Morgan, ordered the Michigan Central Railroad Company to re-ice the car, stating that " it was empty and needed icing right away; " that Morgan next went to the car two days later and found that the Michigan Central Railroad Company had failed to put ice in it; that the bunkers were empty and the peaches soft, overheated and beginning to show decay; that he took the matter up with the man in charge of the icing for the railroad company and was informed that the railroad company could not ice the car.

On September thirteenth A. Jacobs & Co., the consignee, notified the railroad company that it refused the car because the peaches had gone down as a result of not having been re-iced. The peaches were sold by the Michigan Central

Railroad Company on September thirteenth or fourteenth for eighteen dollars.

Although the defendant was ordered to re-ice the car at Montrose, and it offered evidence that it had done so, the jury could have found from the evidence in the case that it had failed to do so. The jury might also have found from the evidence that if the car had been re-iced as ordered at Montrose, the bunkers would have been one-half full on the morning of September ninth instead of being practically empty. The jury might further have found that in order to hold the ripe peaches from the morning of September ninth the car should have been re-iced at once.

It was the contention of the plaintiff upon the trial that it was negligence not to have re-iced the car at Montrose and not to have re-iced it at Detroit on September ninth, after being directed to do so by the consignee. Both of these questions were submitted to the jury over the objection and exception of the defendant, and the jury found for the plaintiff.

The appellant contends here that it was error for the trial court to have submitted to the jury the question of whether or not the Michigan Central Railroad Company was negligent in failing to re-ice the car at Detroit on September ninth when directed to do so by the consignee. The appellant bases such contention upon the ground that the defendant, the New York Central Railroad Company, the initial carrier, cannot be held liable for the violation of the agreement of the Michigan Central Railroad Company to re-ice the car as directed by the consignee after the car reached Detroit, as there was no agreement to that effect embodied in the written bill of lading. It is urged that a recovery has been permitted against the defendant because the final carrier has violated an independent, collateral agreement, entered into with the consignee of the car after its arrival at Detroit, and it is urged that this defendant cannot be held liable for such a breach of contract by the Michigan Central Railroad Company.

There is authority for the proposition that the initial carrier cannot be held liable for a breach of duty or of contract arising as a result of negotiations between the final carrier and the consignee after the arrival of the shipment at its destination. It has been held that the initial carrier is not liable on such

a new, independent contract, either at common law or under the Federal statutes. In *Wien* v. *N. Y. C. & H. R. R. R. Co.* (166 App. Div. 766) it was held that the initial carrier was only liable on the original shipment and not for the failure of the final carrier to enter into a contract to reship the goods after the consignee had refused to receive them. In *Parker-Bell Lumber Co.* v. *Great Northern Ry. Co.* (69 Wash. 123; 124 Pac. Rep. 389; 41 L. R. A. [N. S.] 1064) it was held that the initial carrier was not liable for damages to goods caused after the point of destination had been changed and the goods rerouted under a new bill of lading over the lines of a new combination of carriers.

It is not necessary for us to pass upon that proposition, as the agreement of the Michigan Central Railroad Company, the final carrier, to re-ice the car on September ninth was not a new, independent agreement within the meaning of the authorities above cited. It was merely an agreement to carry out an obligation under the contract of shipment.

When the defendant accepted the peaches for shipment, it contracted to re-ice the car to capacity at Montrose. This the jury could have found that it did not do. If it had re-iced the car as directed, it might, with some reason, urge that, having received instructions in regard to re-icing, it would not be liable if such re-icing was not sufficient to protect the fruit from injury. Having failed to re-ice at Montrose as it was directed and paid to do, it cannot be heard to say that it was not liable to re-ice at all. When the defendant undertook the transportation of the peaches it assumed the duty of providing a sufficient supply of ice. It was bound to exercise the care and diligence that the character of the goods required and is liable for the damages caused by a failure to ice or by insufficient icing. (10 C. J. 92, § 101; *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Renfroe*, 82 Ark. 143; 100 S. W. Rep. 889; 10 L. R. A. [N. S.] 317; *Beard & Sons* v. *Illinois Central Ry. Co.*, 79 Iowa, 518; 7 L. R. A. 280.)

There is evidence in the record from which the jury might have found that if the car had been re-iced at Montrose the bunkers would have been one-half full on the morning of September ninth and one-quarter full on the morning of September eleventh. It is undisputed that failure to re-ice

the car on September ninth would result in the spoiling of the peaches by September eleventh.

It seems clear to us that the duty of protecting the fruit from injury by icing the car was a duty growing out of the contract of shipment and that the agreement of the Michigan Central Railroad Company to re-ice the car at Detroit on September ninth was simply an agreement to carry out and fulfill the duty resting upon the carrier under the original contract of shipment.

The shipment was one in interstate commerce and the provisions of the Interstate Commerce Act are to be read into the contract of transportation. Under the provisions of the Carmack Amendment to the Hepburn Bill, amending the Interstate Commerce Act (34 U. S. Stat. at Large, 593, 595, § 7, amdg. 24 id. 386, § 20), and under the first Cummins Amendment thereto (38 id. 1196, 1197, chap. 176), the initial carrier is liable for any damage which results from negligence or carelessness in transportation, whether the damage happens upon its own lines or upon those of a connecting carrier, and, under section 1 of the act, icing is included under the term transportation. (*Earnest* v. *D., L. & W. R. R. Co.,* 149 App. Div. 330; *Wien* v. *N. Y. C. & H. R. R. R. Co.,* 166 id. 766; *Adams Express Co.* v. *Croninger,* 226 U. S. 491; 57 Law. Ed. 314.)

Section 1 of the act provides: " The term ' transportation ' shall include * * * all services in connection with the receipt, delivery, elevation, and transfer in transit, ventilation, refrigeration or icing, storage, and handling of property transported." (24 U. S. Stat. at Large, 379, § 1, as amd. by 34 id. 584, § 1, and 36 id. 544, 545, § 7.)

It is urged by the appellant, however, that as soon as the car was placed on the team track and the peaches had been inspected by the consignee's agent and found ripe, but not over-ripe, and in good condition, that the duty of the carrier as such was ended, even though the car had not been re-iced and the bunkers were empty at the time. We are unable to agree with such contention. It was apparent that if the peaches, which were ripe, were left in the car at that time of year, they would deteriorate very rapidly if not iced, and the evidence is undisputed that the peaches spoiled in two days

The representative of the Michigan Central Railroad Company was told by the inspector that the car was " empty and needed icing right away." The consignee received notice of the arrival of the car on the morning of September ninth; it inspected the car by eleven A. M. that day and ordered it re-iced. The Michigan Central Railroad Company failed to re-ice it as agreed and when the representative of the consignee went to the car on the morning of September eleventh the peaches were spoiled. Under the terms of the bill of lading the consignee was entitled to forty-eight hours after notice of the arrival of the car within which to remove the peaches. During that time the common carrier could not abandon the fruit or negligently expose it to injury. It was bound to take care of it and use reasonable diligence to protect it from injury.

Independent of any agreement, in this State, a consignee has a reasonable time after notice of the arrival of goods in which to remove them. (*Faulkner* v. *Hart*, 82 N. Y. 413; *Wien* v. *N. Y. C. & H. R. R. R. Co.*, *supra;* 10 C. J. 235, and cases cited.)

During such reasonable time the carrier holds the goods as carrier. Its duty is not reduced to that of a warehouseman until after the expiration of such reasonable time. (*Fenner* v. *Buffalo & State Line R. R. Co.*, 44 N. Y. 505; *McKinney* v. *Jewett*, 90 id. 267; 10 C. J. 236, § 332.)

In this case the liability of the carrier as such was extended under the contract of shipment to forty-eight hours after notice of the arrival of the car. During that time it was liable as carrier, as it would have been liable as carrier for a reasonable time, after notice to the consignee of the arrival of the car, if the contract of shipment had not, by express terms, fixed a definite time. (*Lyons* v. *N. Y. C. & H. R. R. R. Co.*, 119 N. Y. Supp. 703; affd., 136 App. Div. 903; *Gary Bros. & Gaffke Co.* v. *Chicago, M. & P. S. Ry. Co.*, 49 Mont. 524; 143 Pac. Rep. 955; *Rustad* v. *Great Northern Ry. Co.*, 122 Minn. 453.)

It was not error for the trial court to hold as a matter of law that there had been no actual delivery of the car to the consignee prior to the agreement of the Michigan Central Railroad Company to re-ice it. The duty of re-icing the car

being a duty of the common carrier, under the facts in this case, the contract of shipment had not been fulfilled at the time the consignee's representative inspected the fruit. There was still something for the carrier to do and it retained possession of the car as carrier pending the performance of that duty. (10 C. J. 232, § 325; Michie Carriers, § 843.)

The inspection of the peaches by the representative of the consignee on September ninth was justified and permitting such inspection did not constitute a delivery of the car to the consignee. (*Earnest* v. *D., L. & W. R. R. Co.*, 149 App. Div. 330.)

The questions of negligence arising through failure to re-ice the car at Montrose and at Detroit were properly submitted to the jury. We have found no error in the record requiring a reversal of the judgment.

All concurred.

Judgment and order affirmed, with costs.