[Civ. No. 3782. Second Appellate District, Division One.—June 2, 1922.]

## SOUTHERN CALIFORNIA COMMERCIAL COMPANY (a Corporation), Respondent, v. ALEARDO ALBERTI et al., Appellants.

[1] COMMON CARRIERS—PAYMENT OF CHARGES BY FINAL CARRIER—ASSIGNMENT OF RIGHTS OF OTHER CARRIERS.—Payment by the final carrier to the initial and intermediate carriers of the respective amounts earned by them in connection with the carriage of certain freight, in accordance with the method usual in cases of that character, as the court may judicially know, by operation of law and in consideration of the payment so made, constitutes an assignment to the final carrier of the rights of the initial and intermediate carriers to recover for the services rendered by them.

[2] ID. — NEGLIGENCE OF CARRIERS — ISSUES — IMMATERIAL FINDING. — Where in an action to recover freight charges in connection with the shipment of a carload of grapes no issue as to delay of the carriers in transporting the car or negligence or want of proper care in handling the grapes is tendered by the pleadings or tried by the court, a purported finding that the grapes upon the arrival of the car at the point of destination were, due to no fault of the carriers, in a condition of fermentation and decay, even if unsupported by the evidence, must be disregarded.

[3] ID.—DELIVERY—EVIDENCE—FINDING.—The evidence having shown that the carload of grapes was delivered at a town about one mile from the town where the consignee resided, and which was designated as the point of destination, and that the former was the usual place for the delivery of freight consigned to the latter place, the trial court was justified in finding that the car was duly delivered at the designated point of destination.

[4] ID.—FREIGHT CHARGES—PRIMARY LIABILITY OF CONSIGNOR.—The agreement having been to deliver the carload of grapes at the designated point of destination to the order of defendants as consignors thereof, they were primarily liable for the freight charges, which, as to them, could be discharged only by payment, and this obligation as to the carrier was not affected by the fact that the freight was not prepaid, nor by defendants' transfer of the bill of lading, subject to the lien for freight charges, to a third party with whom the carrier had no contractual relation.

[5] ID.—INSPECTION BY CONSIGNEE—EVIDENCE—FINDING—OBLIGATION TO PAY CHARGES.—No evidence having been introduced in support of defendants' affirmative allegation that the final carrier permitted the consignee to inspect the grapes contrary to the express direction of defendants indorsed on the bill of lading, a finding thereon was unnecessary; but even though the evidence had shown the granting of such permission by plaintiff's assignor, the final carrier, such act could not excuse defendants from their obligation to pay the freight charges, even though they might be entitled to recover damages for such act.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. A. Massey for Appellants.

R. A. Morton and Mulford & Dryer for Respondent.

4. Liability of shipper for freight and demurrage upon refusal of consignee to accept goods, notes, 30 **Am. St. Rep.** 635; 52 L. R. A. (N. S.) 398.

SHAW, J.—This action is by plaintiff as assignee of the Kansas City Southern Railway Company, which was the final carrier, to recover freight charges for the transportation of a carload of grapes from Los Angeles, California, to Frontenac, Kansas. Judgment for plaintiff, from which defendants appeal.

The issues tendered by the verified pleadings are simple. It is alleged in the complaint that on October 14, 1916, defendants delivered to the Los Angeles & Salt Lake Railway Company, in the county of Los Angeles, a carload of wine grapes under an agreement for the transportation thereof to Frontenac, Kansas, where V. Brunetti should be notified of its arrival, and the same delivered to the order of defendants; that the carload of grapes was by said Salt Lake Railway Company and its connecting lines delivered to plaintiff's assignor, the Kansas City Southern Railway Company, by which as final carrier it, on October 23d, arrived at Frontenac, Kansas, whereupon a notice in writing of such fact was duly given by the agent of such last-named railway company to V. Brunetti, who presented a bill of lading therefor, but refused to accept said carload of grapes or pay plaintiff's assignor as final carrier the lawful charges thereon; that upon such refusal of Brunetti, plaintiff's assignor immediately communicated with defendants and requested instructions for the disposal of the goods, but they refused to instruct plaintiff's assignor in the premises, whereupon, for $30, the grapes were lawfully sold for freight charges, which sum was credited upon the through freight charges for the transportation of said carload of grapes, which amounted to $374.90; that plaintiff's assignor, as the final carrier, advanced to the initial and intermediate carriers their respective proportions of .said freight charges; that the balance due thereon of $344.90 has not been paid; that prior to the commencement of this action the Kansas City Southern Railway Company duly assigned to plaintiff all its right, title, and interest in and to its claim for said freight charges.

By their answer defendants denied that the grapes were transported, as alleged in the complaint, from Los Angeles County to Frontenac, or that Brunetti was notified of the arrival of the car at its destination, or that he refused to accept the same and pay the freight charges thereon, or

that such charges were $374.90 or any sum whatsoever, or that said sum, other than $30, has not been paid, or that the final carrier, plaintiff's assignor, paid the intermediate carriers their proportion of said freight, or that the claim for such freight had been assigned to plaintiff; as to all of which issues the court, upon ample evidence establishing such facts, found adversely to defendants. Further answering, defendants, while admitting they ordered the car of grapes shipped to Frontenac and delivered to their order, alleged their act in so doing was not for their account, but for and on behalf of V. Brunetti, who, as provided in the agreement, should not be permitted to inspect the grapes; that plaintiff's assignor did permit an inspection thereof by Brunetti, and that he paid said freight charges. The court made no finding as to whether or not plaintiff's assignor permitted an inspection of the grapes by Brunetti in violation of the terms of the agreement, as alleged.

[1] There is no merit in appellants' contention that the evidence is insufficient to establish the alleged assignment. The evidence conclusively shows the proportion of the total freight charges earned by the initial and intermediate lines of road over which the car was transported, and that plaintiff's assignor paid the respective amounts earned to each of them, which was in accordance with the method usual in cases of this character, as the court may judicially know. (*Atlantic Coast Line R. Co.* v. *Riverside Mills,* 219 U. S. 186 [31 L. R. A. (N. S.) 7, 55 L. Ed. 167, 31 Sup. Ct. Rep. 164, see, also, Rose's U. S. Notes].) Such act, by operation of law and in consideration of the payment so made, constituted an assignment to the final carrier of the rights of the initial and intermediate carriers to recover for the services rendered by them. (Hutchinson on Carriers, sec. 828; *Bissel et al.* v. *Price,* 16 Ill. 408; *Chicago & A. R. Co.* v. *Hall,* 69 Ill. App. 497.) The rule appears to be founded upon commercial necessities, and without the application of which both carriers and public concerned would be subjected to great inconvenience and unnecessary trouble and expense.

[2] Appellant's chief contention, and that to which the larger part of their argument is devoted, is that the agencies which undertook the transportation of the car of grapes

were guilty of negligence, by reason of which fact the grapes were spoiled in transit and valueless when they reached their destination. A sufficient answer to this contention is that no issue as to delay of the carriers in transporting the car, negligence, or want of proper care in handling the grapes was tendered by the pleadings or tried by the court; hence the purported finding that the grapes upon the arrival of the car were, due to no fault of the carriers, in a condition of fermentation and decay, even if unsupported by the evidence, must be disregarded.

[3] That the evidence shows the car to have been delivered at Pittsburg, Kansas, which is about one mile from Frontenac, and that the former was the usual place for the delivery of freight consigned to the latter place, justified the finding of the court that the car was duly delivered at Frontenac.

[4] The agreement was to deliver the car of grapes at Frontenac to the order of defendants as consignors thereof. As such consignors they were primarily liable for the freight charges, which, as to them, could be discharged only by payment. "The consignor with whom the contract of shipment is made is primarily liable for the payment of the freight charges, whether he is the owner of the goods or not" (10 Corpus Juris, p. 445; Hutchinson on Carriers, sec. 810; *Central R. R. Co. of New Jersey* v. *MacCartney,* 68 N. J. L. 165 [52 Atl. 575]; *Wells, Fargo & Co.* v. *Cuneo,* 241 Fed. 727; *Atlas S. S. Co.* v. *Colombian Land Co.,* 102 Fed. 358 [42 C. C. A. 398]), and this obligation as to the carrier was not affected by the fact that the freight was not prepaid, nor by defendants' transfer of the bill of lading, subject to the lien thereof for freight charges, to a third party with whom the carrier had no contractual relation. (*Cincinnati etc. R. Co.* v. *Vredenburgh Sawmill Co.,* 13 Ala. App. 442 [69 South. 228].)

[5] Finally, it is contended that the carrier permitted the consignee to inspect the grapes contrary to the express direction of defendants indorsed on the bill of lading, and as to which the court made no finding. A finding was unnecessary for the reason there was no evidence in support of such affirmative allegation. (*Spader* v. *McNell,* 130 Cal. 500 [62 Pac. 828]; *De Tolna* v. *De Tolna,* 135 Cal. 575 [67 Pac. 1045].) Conceding, however, that the evidence

shows the granting of such permission by plaintiff's assignor, such fact was immaterial, since, even though defendants might be entitled to recover damages for such act, it could not excuse them from their obligation to pay the freight charges. In 10 Corpus Juris, title "Carriers," page 253, it is said: "The consignee has the right to examine the goods before accepting delivery; and this doctrine applies to interstate as well as intrastate shipments, there being nothing in the Carmack Amendment which restricts this right." (See, also, *Earnest* v. *Delaware, L. & W. R. Co.,* 149 App. Div. 330 [134 N. Y. Supp. 323]; *Yuille-Miller Co.* v. *Chicago, I. & L. Ry. Co.,* 164 Mich. 58 [128 N. W. 1099]; Hutchinson on Carriers, sec. 733.) Moreover, the direction was, "No inspection of car allowed by *consignee.*" For aught that appears to the contrary, Brunetti, if he inspected the car, did so as agent of the consignors, who, as owners, had the right to examine it.

We find no merit in any of the points urged by appellants for a reversal.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1922.

All the Justices present concurred.

Myers, J., *pro tem.,* was acting.