[Civ. No. 5836. First Appellate District, Division Two.—September 14, 1927.]

PETER CRINELLA, Respondent, v. NORTHWESTERN PACIFIC RAILROAD COMPANY (a Corporation), Appellant.

Stanley Moore, R. W. Palmer and Geary & Geary for Appellant.

Emmett I. Donohue and G. P. Hall for Respondent.

KOFORD, P. J.—This is an action by a shipper against a common carrier for damages for negligence in transporting two carloads of grapes from Fulton, California, to Buhl, Minnesota. The negligence alleged in the complaint was unusual delay and failure to properly ice the cars in transit, resulting in decay of the shipments. The trial was had by a jury. The verdict was for the plaintiff for $356.44 on the

first car and $1,800.13 on the second car. The defendant appeals from the judgment.

The main contention of appellant is that plaintiff failed to prove that he filed a claim against the common carrier for the damage before bringing this action. It contends that where no claim for loss or damage has been filed the usual presumption of negligence upon the part of the carrier does not exist, and from this (confusing presumption and inference, as it seems to us), it argues that the inference of the carrier's negligence and liability is not to be made merely from the proof of the shipment of the grapes in good condition and the arrival in bad condition, together with unreasonable delay, and that respondent must actually prove the negligent acts causing the damage. We quote from the appellant's brief as follows:

"It is conceded that had respondent proven the filing of a claim with appellant covering the cars comprising the subject matter of his action, that there would have been incumbent upon him to prove: 1. That he delivered the grapes to the carrier in good condition; and, 2. That they were delivered by the carrier to the consignee in a deteriorated condition. It would then have been the burden of the appellant to have proven that it had not been guilty of negligence in the transport of the cars, but that any damage thereto was attributable to either of the following causes: 1. The act of God. 2. The public enemy. 3. Public authority; and, 4. Inherent nature of the goods. However, by the failure of respondent to prove that he had filed a claim with appellant for damages to cars Nos. 1 and 2, the usual presumption of negligence upon the part of the carrier does not exist, and had no proper place in the consideration by court or jury of the instant case."

It is not the appellant's contention that the shipper lost his right of action entirely by a failure to file a claim in writing, but that where no claim is filed the requirements of plaintiff's proof are different; and that here, in the absence of a claim filed, the plaintiff's evidence was insufficient to support a finding of negligence and, also, that the court's instructions given to the jury concerning a *prima facie* case were erroneous. These contentions are founded upon language used in the case of *Barrett* v. *Van Pelt,* 268 U. S. 85 [69 L. Ed. 857, 45 Sup. Ct. Rep. 437, see, also,

Rose's U. S. Notes], interpreting language similar to the provisions of section 2b of the bill of lading or shipping receipt issued to the plaintiff herein. The section of the bill of lading referred to provides that claims for loss, damage, or injury to property must be made within certain specified times, "provided that, if such loss, damage or injury was due to delay or damage while being loaded or unloaded, or damaged in transit by carelessness or negligence, then no notice of the claim or filing of claims shall be required as a condition precedent to recovery." These provisions of the bill of lading are provided for or permitted by acts of Congress and amendments thereto. (Cumming's Amendment amending part of sec. 7 of Carmack Amendment, U. S. Stats. at Large, vol. 38, p. 1196; Carmack Amendment to the Act to Regulate Commerce, U. S. Stats. at Large, vol. 34, pp. 585, 595 [49 U. S. C. A., sec. 20, pars. 11, 12]; Bills of Lading Act, U. S. Stats. at Large, vol. 39, p. 538 [49 U. S. C. A., secs. 81–124].)

This provision of the bill of lading and the law providing for it received interpretation in *Barrett* v. *Van Pelt, supra,* the effect of which was to eliminate the comma after the word "unloaded" and to strike out the final *d* in the word damaged, thereby clarifying the doubtful grammatical meaning of the proviso. The court thus held this proviso to mean that in case the claim was based upon carelessness or negligence in respect to any of the things mentioned in the proviso that then no claim need be filed as a condition precedent to an action of damages against the carrier.

The authority relied upon by appellant does not have the sweeping effect for which it contends. While it may have the effect of holding that where no claim has been filed, an action against a carrier based upon negligence does not enjoy the benefit of presumed negligence, or liability without proven negligence, nevertheless, it does not purport to change the rule concerning what constitutes a *prima facie* case against a carrier in case of actual negligence. This question received further consideration by the United States supreme court in *Chesapeake & Ohio R. R. Co.* v. *Thompson Mfg. Co.,* 270 U. S. 417 [70 L. Ed. 659, 46 Sup. Ct. Rep. 318]. What is there said disposes of the greater part of the appellant's contentions herein. We quote: "It is sometimes said that the basis of the carrier's liability for loss of goods or for

their damage in transit is 'presumed negligence.' (*Hall and Long* v. *Railroad Companies,* 80 U. S. [13 Wall.] 367, 372 [20 L. Ed. 594, see, also, Rose's U. S. Notes].) But the so-called presumption is not a true presumption, since it cannot be rebutted, and the statement itself is only another way of stating the rule of substantive law that a carrier is liable for a failure to transport safely goods intrusted to its care, unless the loss or damage was due to one of the specified causes. (Citing authorities.) . . .

"There is no language in the statute from which a purpose may be inferred to vary or limit the common law rules governing proof of negligence as a fact in issue, and the shipper may follow these rules when he seeks to show that no notice of claim was necessary.

"The respondent therefore had the burden of proving the carrier's negligence as one of the facts essential to recovery. When he introduced evidence to show delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition, the petitioner became subject to the rule applicable to all bailees, that such evidence makes out a *prima facie* case of negligence. (*Miles* v. *International Hotel Co.,* 289 Ill. 320 [124 N. E. 599] ; *Miller* v. *Miloslowsky,* 153 Iowa, 135 [133 N. W. 357] ; *Dinsmore* v. *Abbott,* 89 Me. 373 [36 Atl. 621] ; *Railroad Co.* v. *Hughes,* 94 Miss. 242, 246 [22 L. R. A. (N. S.) 975, 47 South. 662] ; *Hildebrand* v. *Carroll,* 106 Wis. 324 [80 Am. St. Rep. 29, 82 N. W. 145].) The effect of the respondent's evidence was, we think, to make a *prima facie* case for the jury.''

The instructions complained of by appellant are supported by authority and are not contrary to the doctrine of *Barrett* v. *Van Pelt, supra.* These instructions were to the effect that proof of damage in transit and unusual delay in transit, or either, shifted the burden of proof to defendant to show its freedom from negligence, and also to the effect that it was incumbent upon the carrier to meet plaintiff's proof of injury in transit by showing that the injury resulted from one of the causes of liability expressly excepted in the shipping receipt.

█ Moreover, the record is not clear that the plaintiff did not file a claim. In this case the plaintiff, while a witness, was asked if he had filed a claim against the defendant. He answered "yes" before the objection was

made. The objection was this—"immaterial, irrelevant, and incompetent." This objection was sustained by the court, although it should have been overruled. The question, as put, did not call for secondary evidence as would be the case if the question had called for the contents of the claim instead of only a response as to whether or not one had been filed. ■ The objection was made by counsel for the defendant and appellant, and it would be unjust to allow appellant to claim that the evidence which he objected to as immaterial is now material, or to claim the record is deficient in lacking what it kept out by this objection. Upon this point appellant attempts to justify the court in sustaining this objection by urging that the question was objectionable as calling for secondary evidence in the absence of preliminary proof showing that the best evidence was not available. We are not able to agree with this. ■ Objections must be specific. Especially so where they are of such a nature that they may be obviated when attention is called to the defective nature of the testimony offered. ■ This question with respect to the offer of secondary evidence against a general objection has been frequently passed upon. (*Eversdon* v. *Mayhew*, 85 Cal. 1 [21 Pac. 431, 24 Pac. 382]; *St. Vincent's Institution, etc.*, v. *Davis*, 129 Cal. 20 [61 Pac. 477]; *People* v. *Louie Foo*, 112 Cal. 23 [44 Pac. 453]; *Banister* v. *Campbell*, 138 Cal. 460 [71 Pac. 504, 603]; *Root* v. *Conlin*, 65 Cal. App. 241 [223 Pac. 1023].)

■ The questions raised by appellant relating to the insufficiency of the evidence to prove negligent icing or unreasonable delay in transit are perhaps sufficiently disposed of by what we have already said, but respondent, instead of relying on what is said in the quoted case to constitute a *prima facie* case, went much further in proving his case. In producing his testimony, he substantially assumed the same character of burden of proof contended for by appellant. The first car took thirteen days and twenty hours to arrive, and the second seventeen days and seventeen hours to arrive at destination. The testimony concerning the customary or usual time consumed in this trip varied. Most witnesses put it around thirteen days, but some put it as low as ten or eleven days. There was sufficient evidence to entitle the jury to find that there had been an unreasonable

delay. ■ Negligence was also predicated upon the failure of the appellant to properly ice the refrigerator-cars in which the grapes were shipped, independently of the alleged delay. Negligence in respect to either delay or icing alone would support the verdict. The testimony would support the inference that each of the cars went either four or five days without icing. Expert testimony was received of the probable effect of the failure to ice under different conditions. The appellant's car record showing a record of the transit of the cars from place to place on their journey, and also appellant's icing record, which purported to show the times, places, and manner of the reicing of the cars were received in evidence. A comparison of these two records showed glaring discrepancies, indicating, in at least one instance, that a car was said to have been iced at a station through which it did not pass. The cars were not iced at all regular icing stations as provided for in the bill of lading.

Appellant claims error by reason of the following facts: Upon the arrival at destination of the second car of grapes, the consignee rejected it. At the trial he gave two reasons for this: First, that he was not permitted to inspect the contents of the car by the local agent of the carrier; second, because he believed from his experience with the first carload of grapes received, and on account of the long delay in the arrival of this second carload, that the shipment would be too much deteriorated for use. On the third day after the arrival of this car at destination the agent, having communicated with his superiors or with the station where the shipment originated, did give permission to the consignee to inspect. Thereupon the consignee inspected and again rejected the shipment, this time signing a written rejection. Appellant claims that the testimony, therefore, does not establish that the grapes were spoiled at the very time they arrived at destination, or at the time delivery was offered without inspection. About twelve days from date of arrival at destination the shipment was sold at public auction for $450. The proceeds of the sale were applied upon the freight bill on the shipment, which was $675.73. The sale was apparently made by the carrier as permitted in case of rejected perishable goods by sections 4c and 4d of the

bill of lading. It does not appear why this sale was not made sooner.

■ The shipment being of a highly perishable nature its condition at least, if not its value at the time of arrival at destination, could be a matter of inference based upon its condition on the third day following, particularly so in view of the length of time occupied in transporting the shipment to destination. However, if the tendered delivery without inspection was an insufficient discharge of the carrier's obligation, its liability thereafter until inspection by the consignee continued as that of a common carrier and not merely as a bailee as contended for by appellant.

Appellant offered an instruction to the effect that, if the consignee refused to accept the shipment the damages resulting thereafter could not be charged to the carrier. The court gave this instruction, but modified it by adding the clause "without lawful reason," following the expression "if the consignee refused to accept delivery."

■ That goods are damaged in part does not justify the consignee in refusing to accept delivery. It is his duty to accept delivery in order to minimize the damage.

■ Where a shipment, however, is damaged to the extent that it is practically valueless, having regard to the expense of acceptance and use and to the purpose for which the shipment was intended, the consignee may reject.

■ Where the shipment offered for delivery is apparently in a damaged condition, but from outward appearances it is impossible to tell the extent of the damage, then the consignee is entitled to inspect the goods before determining whether he will accept or reject them. (*Brand* v. *Weir*, 27 Misc. Rep. 212 [57 N. Y. Supp. 731]; *Berger-Crittendon Co.* v. *Chicago etc. Ry. Co.*, 159 Wis. 256 [150 N. W. 496]; *McGrath* v. *Charleston & W. C. Ry.*, 91 S. C. 552 [Ann. Cas. 1914A, 64, 66, 42 L. R. A. (N. S.) 782, 75 S. E. 44]; 2 Hutchinson on Carriers, 3d ed., sec. 733; 4 R. C. L., p. 831, sec. 285; 4 Elliott on Railroads, sec. 2299, note 98, and cases cited; 10 Cor. Jur., p. 253; *Southern Cal. Com. Co.* v. *Alberti*, 58 Cal. App. 84 [207 Pac. 1023].)

■ We hold, therefore, that the liability of the defendant continued to be that of a common carrier after the arrival of the shipment at destination and until the consignee was permitted to inspect the same. The circum-

stances surrounding the arrival of the shipment were of a character to indicate that the grapes were damaged and the consignee was entitled to inspect before determining whether he should accept or reject. If we are correct in this conclusion it is not necessary to determine the precise value of the shipment on the date of arrival and determine again the same thing as of the date when the consignee formally inspected and formally rejected the shipment. It is sufficient that the evidence shows the grapes were apparently spoiled upon arrival at destination, entitling the consignee to inspect.

The expression ''without lawful reason'' used by the trial court in modifying appellant's requested instruction is criticised as too abstract and indefinite without further instruction as to what constitutes a lawful reason. Section 8 of the Bills of Lading Act, U. S. Stats. at Large, volume 39, page 538 [49 U. S. C. A., sec. 88], states that the carrier is bound to deliver the shipment under specified normal conditions in the absence of ''some lawful excuse.'' Nothing is expressly stated in the act concerning the duty of the consignee to accept, but his duty and that of the carrier must, in the nature of things, be reciprocal.

If the use of the expression is not justified by the use of substantially the same words in the statute, we find no conflict in the evidence of the reasons for rejection. Respondent, as a witness at the trial, gave his reasons for his rejection as we have indicated. Appellant has not pointed out any lawful excuse for its refusal to allow inspection. The payment of freight was guaranteed by bond. The fact that shipper and consignee were both interested in the grapes as joint adventurers does not make the consignee's rights different from other consignees' rights in respect of the right of inspection. The bill of lading as to this car did not prohibit inspection, but, on the contrary, implied that inspection was permissible. (Sec. 7 of Bill of Lading.) In view of this record we cannot say that the modification of the instruction was error or that it resulted in prejudice to the rights of appellant.

The evidence does not sustain the defense of act of God with respect to the delay of the second car. The evidence tended to show that some part of the delay would come under this defense, but such part was inconsiderable in com-

parison with the whole delay and had little, if anything, to do with the icing issue. The jury's implied finding against this defense is supported by the testimony.

 The sufficiency of the opinion testimony on the market value of the grapes at the point of destination was also a question for the jury. The testimony of the witnesses Cupoletti, Arko, and Burnetti was sufficient to permit the jury to arrive at its conclusion upon this issue. Most of this opinion testimony seems to relate to the Zinfandel grapes, but the Petite Syrrah grapes were compared with the Zinfandels by some of the witnesses, who stated that they were worth more than the Zinfandels. There was other testimony to indicate that this difference was about $30 a ton. Damages for the more expensive variety, however, were apparently based upon the assumption that their value was the same as the less expensive variety. We cannot say that there is a failure of evidence upon this point.

 Defendant's requested instruction, number 1, was given in substance by instruction number 6 and no error can be predicated upon the court's refusal to give this instruction twice.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.