GARY BROS. & GAFFKE CO., RESPONDENT, *v.* CHICAGO, M. & P. S. RY. CO., APPELLANT.

(No. 3,410.)

(Submitted September 19, 1914.  Decided October 22, 1914.)|

[143 Pac. 955.]

*Carriers—Railroads—Injury to Goods at Destination—Nature of Liability.*

Carriers of Freight—Nature of Liability.
  1.  The rule which relieves a common carrier, as such, from liability for injury to goods, upon placing the cars where they can be conveniently unloaded by the consignee, does not relieve from all liability but merely changes the liability from that of carrier to that of warehouseman.  (Rev. Codes, sec. 5311.)

  [As to liability of carrier when reduced to that of warehouseman, see notes in 97 Am. St. Rep. 84; Ann. Cas. 1914B, 778.]

Same—Contract of Carriage—Liability Thereunder.
  2.  Where, under a contract of carriage as indorsed on the bill of lading the consignee of a shipment of potatoes had forty-eight hours after notice of their arrival at destination within which to remove them before defendant railway company's liability as carrier ceased, and the potatoes were not removed within that time, but froze in the cars, it was answerable for the consequent damage under its liability as thus fixed.

  [As to when carrier's liability ends and what amounts to delivery, see note in 8 Am. Dec. 214.]

*Appeal from District Court, Gallatin County; Ben. B. Law, Judge.*

ACTION by Gary Bros. & Gaffke Company against the Chicago, Milwaukee & Puget Sound Railway Company.  Judgment for plaintiff.  Defendant appeals from the judgment and from an order denying it a new trial.  Affirmed.

*Messrs. Hartman & Hartman,* for Appellant, submitted a brief; *Mr. Walter E. Hartman* argued the cause orally.

We contend that the spotting of the two cars on appellant's delivery track, the notification to consignee of their arrival and spotting there, his taking possession of the same, inspecting them as they stood upon said track, finding them in good condition and so notifying the agents of the company, on the afternoon

of the 26th of October, his subsequent sale on that day of one of the cars to a purchaser who also inspected them in connection with the consignee, under the facts as disclosed by the record constitute a delivery of the cars to the consignee on the afternoon of October 26; that consignee's failure to request or to notify appellant's agents that they were expected to further look after the cars estopped him or the respondent from claiming damages for their freezing during the night of the 26th or the morning of the 27th; and that the provisions of the first paragraph of section 5 on the back of the contract of shipment, and section 8 of said contract providing: "That the owner or consignee shall pay the freight and all other lawful charges accruing on said property, and, if required, shall pay the same before delivery," in no wise apply to a shipment where delivery has been effected prior to the expiration of forty-eight hours after notice or prior to the payment of the freight. (See 6 Cyc. 456, 457; *Independence Mills Co.* v. *Burlington etc. Ry. Co.,* 72 Iowa, 535, 2 Am. St. Rep. 258, 34 N. W. 320; *MacVeagh & Co.* v. *Atchison, T. & S. F. R. Co.,* 3 N. M. 205, 5 Pac. 457; *Gregg* v. *Illinois Central Ry. Co.,* 147 Ill. 550, 37 Am. St. Rep. 238, 35 N. E. 343; *Whitney Mfg. Co.* v. *Richmond & Danville R. R. Co.,* 38 S. C. 365, 37 Am. St. Rep. 767, 17 S. E. 147; *Rothchild Bros.* v. *Northern Pac. Ry. Co.,* 68 Wash. 527, 40 L. R. A. (n. s.) 773, 123 Pac. 1011; *Kenny Co.* v. *Atlanta W. P. R. Co.,* 122 Ga. 365, 50 S. E. 132; *Arkadelphia Mill Co.* v. *Smoker Merchandise Co.,* 100 Ark. 37, 139 S. W. 680; *Vaughn* v. *New York N. H. & H. R. Co.,* 27 R. I. 235, 61 Atl. 695; *Anchor Mill Co.* v. *Burlington, C. R. & N. R. Co.,* 102 Iowa, 262, 71 N. W. 255.) Where goods are shipped to a point on the carrier's line where there is no agent, depot or warehouse, and this is distinctly understood by the consignee at the time of the shipment and is not unreasonable in view of the condition of the carrier's business, a complete delivery of the goods is effected by the carrier's safely delivering the car containing them on the sidetrack at its destination (*South & North Ala. R. Co.* v. *Wood,* 66 Ala. 167, 41 Am. Rep. 749); especially where the consignee also

assumes control of the car and its contents, by proceeding to unload a part of the goods, and by locking the car with a lock of his own, upon leaving it for the night partly unloaded. (*Southern R. Co.* v. *Barclay,* 1 Ala. App. 348, 56 South. 26.)

. But in *Missouri P. R. Co.* v. *Wichita Wholesale Grocery Co.,* 55 Kan. 525, 40 Pac. 899, it was held that a carload of goods was not delivered to the consignee, so as to relieve the carrier from liability as such for the loss thereof by fire, although the carrier had placed the car upon a spur track at the rear of consignee's warehouse, at the exact place where the consignee was accustomed to receive and unload its freight, where the car was so placed on Sunday afternoon, and it was consumed by fire before business hours on Monday morning. In this case, the court said: "It [the carrier] cannot make a constructive delivery except at a time when the plaintiff might reasonably be required to receive it, and that could only be during business hours of a business day, where there was no custom or agreement to receive at any other time." (See, also, *Eagle* v. *White,* 6 Whart. 505, 37 Am. Dec. 434.) Nor is there a delivery of a carload of goods by the carrier where it merely places the car containing them on the unloading track, and such cars are usually placed, and notifies the person for whom the goods are intended, who, without the knowledge or consent of the carrier, and without authority from the consignee, breaks the seal of the car, inspects the goods, and refuses to accept them or to pay the draft attached to the bill of lading therefor. (*Yuille-Miller Co.* v. *Chicago, I. & L. R. Co.,* 164 Mich. 58, 128 N. W. 1099; *Schopp Fruit Co.* v. *Missouri P. R. Co.,* 115 Mo. App. 352, 91 S. W. 402.)

We submit that under the authorities above cited the potatoes in question were delivered to Downing, the consignee, on the afternoon of October 26.

The provision of the first paragraph of section 5 on the back of the way-bill, that property not removed by the party entitled to receive it within forty-eight hours (exclusive of legal holidays) after notice of its arrival has been duly sent and given

may be kept in a car, *etc.*, evidently refers to and is controlling over all shipments which arrive at the point of destination. When they so arrive notice must be given of their arrival. After such notice is given the party notified has forty-eight hours within which to remove the same, and if he does not remove it within the forty-eight hours, it may then be held by the carrier subject to its liability as warehouseman only. Until the end of the forty-eight hours, the carrier holds it subject to its liability as carrier. It applies only to goods which have not been delivered. And if, as we contend, these goods were delivered, the provision does not apply.

*Mr. John A. Luce,* for Respondent, submitted a brief and argued the cause orally.

Originally all carriers were required to deliver freight to the place of business of the consignee. The rule has been gradually relaxed in favor of railroads until two rules have been formulated. These are the New Hampshire rule and the Massachusetts rule. These are further modified into what is known as the New York rule. The Massachusetts rule is: When the transit is ended, and the carrier has placed the goods in his warehouse to await delivery to the consignee, his liability as carrier is ended also, and he is responsible as warehouseman only. This was first announced in *Thomas* v. *Boston & P. R. Corp.,* 10 Met. 472, 43 Am. Dec. 444. This rule has been followed in Georgia, Illinois, Indiana, Iowa, Missouri, North Carolina, Pennsylvania and South Carolina. (2 Hutchinson on Carriers, sec. 702.) The New Hampshire rule is: Merely placing the goods in the warehouse or on a track does not discharge the carrier, but he remains liable as such until the consignee has had a reasonable time after their arrival to inspect and take them away in the common course of business. First announced in *Moses* v. *Boston & M. R. Co.,* 32 N. H. 523, 64 Am. Dec. 381, in which it was said that while the Massachusetts rule was of a "plain, precise and practical character," that "by it the salutary and approved principles of the common law

are sacrificed to considerations of convenience and expediency."
This rule is followed in Alabama, Arkansas, California, Connecticut, Kansas, Kentucky, Louisiana, Michigan, Minnesota, Nebraska, New York, Ohio, Texas, Vermont, Wisconsin and West Virginia. (2 Hutchinson on Carriers, sec. 704.) The so-called New York rule is only a stronger application of the New Hampshire rule. (*Id.*, sec. 708; 6 Cyc. 458.) The better reasoning supports the New Hampshire rule. But by either of these rules, unless the railroad unloads and warehouses the freight, it is liable as carrier until after notice and a reasonable time to inspect and remove. (*Chicago & N. W. Ry. Co.* v. *Bensley,* 69 Ill. 630; *Chicago etc. Ry. Co.* v. *Sawyer,* 69 Ill. 285, 18 Am. Rep. 613; *Porter* v. *Chicago etc. Ry. Co.,* 20 Ill. 407, 71 Am. Dec. 286; *Mobile & G. R. Co.* v. *Prewitt,* 46 Ala. 63, 7 Am. Rep. 586; *Columbus & W. R. Co.* v. *Ludden,* 89 Ala. 612, 7 South. 171; 42 Am. & Eng. R. R. Cas. 404.) Placing cars upon the sidetrack ready for delivery does not constitute a delivery nor relieve the carrier until the consignee has reasonable time to inspect and to remove the goods. (*Leavenworth etc. R. R. Co.* v. *Maris,* 16 Kan. 333; affirmed in *Missouri Pac. Ry. Co.* v. *Wichita W. Grocery Co.,* 55 Kan. 525, 40 Pac. 899; *McGregor* v. *Oregon R. R. & Nav. Co.,* 50 Or. 527, 14 L. R. A. (n. s.) 668, 93 Pac. 465; *Walters* v. *Detroit United R. Co.,* 139 Mich. 303, 102 N. W. 745; *Hicks* v. *Wabash R. Co.,* 131 Iowa, 295, 8 L. R. A. (n. s.) 235, 108 N. W. 534; *Normile* v. *Northern Pac. R. Co.,* 36 Wash. 21, 67 L. R. A. 271, 77 Pac. 1087; *Wood* v. *Crocker,* 18 Wis. 345, 86 Am. Dec. 773; *Burr* v. *Adams Exp. Co.,* 71 N. J. L. 263, 58 Atl. 609; *Winslow* v. *Vermont N. R. Co.,* 42 Vt. 700, 1 Am. Rep. 365; 5 Am. & Eng. Ency. of Law, 2d ed., 268; *Fisher* v. *Northern Pac. Ry. Co.,* 49 Wash. 258, 126 Am. St. Rep. 867, 94 Pac. 1073.)

Under section 5309, Revised Codes, it was incumbent upon appellant to deliver the potatoes to the consignee. Under the provisions of section 5311, not having delivered the freight personally to the consignee or his agent, it was incumbent upon it to give notice to the consignee of its arrival, to keep the same

in safety upon its responsibility as a warehouseman, until the consignee had a reasonable time to remove it. This reasonable time was provided by the bill of lading to be forty-eight hours after the notice. This contract is capable of only one construction, and that is, it extends the liability as a carrier beyond the time of giving notice, to which the statute limits it, and to forty-eight hours after such notice. A contract somewhat similar to this was considered in the case of *Scheu* v. *Benedict,* 116 N. Y. 510, 15 Am. St. Rep. 426, 22 N. E. 1073. The court said: "If the consignee neglects to accept or to receive the goods, the carrier is not thereby justified in adandoning them or in negligently exposing them to injury. If they are not accepted and received when notice is given of their arrival, he may relieve himself from responsibility by placing the goods in a warehouse for and on account of the consignee, but so long as he has the custody, a duty devolves upon him to take care of the property and preserve it from injury." (See, also, *Tarbell* v. *Royal Exchange Shipping Co.,* 110 N. Y. 170, 6 Am. St. Rep. 350, 17 N. E. 721; *Hathorn* v. *Ely,* 28 N. Y. 78; *Fisk* v. *Newton,* 1 Denio, 45, 43 Am. Dec. 649; *Price* v. *Powell,* 3 N. Y. 322; *Fenner* v. *Buffalo etc. R. R. Co.,* 44 N. Y. 505, 4 Am. Rep. 709.)

Defendant was guilty of gross negligence of its duty to "safely keep" the property. The injury was not caused by an irresistible superhuman cause, but could have been easily prevented by the shipping in proper cars or by ordinary care after the Butte agents had been warned of the storm and to care for perishable property. (Sec. 5354, Rev. Codes; *Ryan* v. *Rogers,* 96 Cal. 349, 31 Pac. 244; *Fay* v. *Pacific Improvement Co.,* 93 Cal. 253, 27 Am. St. Rep. 198, 16 L. R. A. 188, 26 Pac. 1099, 28 Pac. 943; *Dorman* v. *Ames,* 12 Minn. 451 (Gil. 341).) The goods being perishable, it was negligence for appellant not to take the proper precautions against freezing. (*Wing* v. *New York etc. R. R. Co.,* 1 Hilt. (N. Y.) 243.) In fact, the rule is stricter where freight is perishable. (5 Am. & Eng. Ency. of Law, 2d ed., 165, 253, 364.)

MR. JUSTICE SANNER delivered the opinion of the court.

The respondent, a corporation, complained that on the 21st and 23d days of October, 1911, it delivered to the appellant, a common carrier, at Patterson, Gallatin county, Montana, two cars of potatoes in good condition, of the value of $932.42, to be safely carried to Butte and there delivered to F. C. Downing upon payment of the freight charges thereon; that the appellant "did not safely carry and deliver said potatoes, which were goods of a perishable nature, but on the contrary so negligently conducted and so misbehaved in regard to the same as such carrier that the same were not delivered in good condition to said F. C. Downing but were injured and rendered worthless and wholly lost" to the respondent, to his damage, *etc.* The answer admits the delivery by respondent to the appellant of the potatoes in good condition for carriage as stated, denies the neglect of duty imputed to it, and alleges that if the potatoes were injured or rendered worthless, it was caused by the negligence of respondent or its consignee Downing, in this: that Downing was notified by appellant's agent of the arrival of the potatoes on the morning of October 26, 1911; that he thereupon came to appellant's office and requested appellant's agents to set the cars out upon its delivery track, which was done; that he then and there inspected the potatoes and accepted and took charge of the same; that the potatoes remained in the cars on the delivery track during the afternoon and night of October 26 without any request having been made by Downing or anyone else that appellant should take any precautions to prevent the potatoes from freezing or exercise any care or supervision over them; that on October 27 Downing informed appellant's agent the potatoes were frozen; that if the potatoes were frozen or in any way injured by cold, it occurred after Downing had taken the custody of and responsibility for the same. The effect of the reply is to deny that Downing accepted or took charge of the potatoes or that they had been delivered to him at the time they were frozen.

The trial was to the court sitting without a jury. There was no dispute but that the potatoes arrived in Butte on the morning of October 26 in good condition; that they were frozen sometime during the night of the 26th or on the morning of the 27th, and that by such freezing they were rendered practically worthless. ''The question litigated was whether, in the light of the facts, there was a delivery of the potatoes on the 26th; if so, it is contended the appellant was not liable; if not, it was liable.'' The court found the issues for the respondent and judgment went accordingly. Appellant moved for a new trial, and this was by order of the court denied. The cause is before us on appeal from that judgment and from that order.

The evidence upon the question at issue is not seriously conflicting. The potatoes arrived at Butte on the morning of October 26 and were placed upon the team track on the appellant's own motion; this is the track customarily employed for the deposit of cars the contents of which were to be unloaded by teams. The consignee, however, did not always unload from this track, but as between him and the appellant it was the custom for the latter to place cars upon the B. A. & P. track if the consignee so requested. Notice of the arrival of the cars was given to the consignee by telephone about noon, and in the afternoon he appeared at appellant's office, ascertained the numbers of the cars and where they were, went to them, entered them and examined the potatoes. Finding the potatoes in good condition, he went up town, met a Mr. Rabbitt, who wished to buy some potatoes, and the two returned to the cars, examined the potatoes, and Rabbitt agreed to take one of the cars. These parties went back up town and the consignee made arrangements with a teamster for unloading to begin the following day. The cars were left upon the team track and on that night were frozen.

As we understand the appellant's contention, it is that the foregoing facts suffice to relieve it from all liability (1) under the statutes of this state, (2) at common law, and (3) under the contract between the parties.

1. The Revised Codes of this state provide that the liability of a railway carrier, as such, continues from the time it accepts the property until it is relieved (sec. 5353) in one of the following ways: (a) By delivering the property to the consignee at the place to which it is addressed, in the manner usual at that place (sec. 5309), or, if there is no usage to the contrary, delivery may be had at the station nearest the place to which the property is addressed (sec. 5310) ; (b) if the property is not delivered to the consignee or his agent personally, notice of its arrival must be given to him, and the carrier must, upon its responsibility as a warehouseman, keep the property until the consignee has had a reasonable time to remove it (sec. 5311), or, if the consignee does not accept and remove the property after the carrier has fulfilled, or duly offered to fulfill, its obligation to deliver, the carrier may exonerate itself from further liability by placing the freight in a suitable warehouse on storage, *etc.* (sec. 5312). Concerning the application of these sections, it is sufficient to say that no attempt was made to follow the provisions of section 5312; that section 5310 does not define the acts which may constitute delivery in the absence of custom; that section 5311 does not apply if a personal delivery is claimed, and if a personal delivery is not claimed and section 5311 does apply, its effect is not to relieve from all liability, but to change the liability from that of carrier to that of warehouseman. We are thus left to section 5309, which likewise is not meant for cases of actual, manual delivery, because these need no aid from statute or custom, but to those cases where, by following custom, a delivery may be accomplished short of the actual, manual transfer of the goods. So considered, section 5309 is not brought to bear for two reasons, *viz.,* the terms of the contract of carriage and the fact that while the evidence shows the placing of cars upon the team track to be a part of the usual manner of delivering freight in carload lots, at Butte, it is not established that, in the absence of contract, delivery is customarily accomplished at Butte by that act or by all the circumstances narrated above.

2. Whether or not a delivery was accomplished on October 26 sufficient to absolve the appellant at the common law is not, in our judgment, of great importance in view of the contract between the parties. It may be said in passing, however, · that the rule invoked which relieves the carrier as such from [1] liability upon placing the cars where they can be conveniently unloaded by the consignee cannot aid the appellant, for it does not relieve from all liability, but, like section 3511, Revised Codes above, merely changes the liability from that of carrier to that of warehouseman. (2 Hutchinson on Carriers, sec. 711; 6 Cyc. 457, par. III; *MacVeagh & Co.* v. *Atchison, T. & S. F. Ry. Co.,* 3 N. M. 205, 5 Pac. 457; *Gregg* v. *Illinois Central Ry. Co.,* 147 Ill. 550, 37 Am. St. Rep. 238, 35 N. E. 343; note to *East Tennessee, V. & G. Ry. Co.* v. *Kelly,* 17 L. R. A. 691 *et seq.*)

3. The contract of carriage indorsed upon the bill of lading contains the following provisions: ''The carrier  *  *  *  of [2]  the property described shall be liable for any loss thereof or damage thereto, except as hereinafter provided.  *  *  * For loss, damage or delay caused by fire occurring after forty-eight hours after notice of the arrival of the property at destination has been duly sent or given, the carrier's liability shall be that of warehouseman only.  *  *  *  Property not removed by the party entitled to receive it within forty-eight hours after notice of its arrival has been duly sent or given, may be kept in car, depot or place of delivery of the carrier, or warehouse, subject to a reasonable charge for storage and to carrier's responsibility as warehouseman only,'' *etc.* The meaning of this language cannot be mistaken, and the distinguished counsel for appellant does not mistake it. He says: It ''evidently refers to and is controlling over all shipments which arrive at the point of destination. When they so arrive notice must be given of their arrival. After such notice is given, the party notified has forty-eight hours within which to remove the same, and if he does not remove it within forty-eight hours, it may then be held by the carrier subject to its liability as warehouseman only.

Until the end of the forty-eight hours, the carrier holds it subject to its liability as carrier. But it goes without saying, of course, that that refers only to property that has not been delivered.'' The implications of this admirable analysis are apparently not foreseen. They are, that the protection afforded by section 5311, Revised Codes, under which the liability of the carrier becomes changed to that of warehouseman immediately upon giving notice, is waived; that the effect of the Massachusetts rule under which the liability of the carrier becomes changed to that of warehouseman when the cars are placed conveniently for unloading is dispensed with; and that the only thing which will exonerate the carrier, as such, within forty-eight hours is the removal of the property. In other words the contract itself not only fixes the liability of the carrier, but defines the character of the delivery which will suffice to avoid it. Confessedly, the proof shows no such delivery on October 26. Whatever, in the absence of the contract, might have been the effect of the circumstances disclosed by the evidence, there was no removal of the potatoes before they were frozen. The appellant having undertaken to answer for their safety under its liability as carrier until they were removed within forty-eight hours, cannot now invoke the aid of any other rule.

The judgment and order appealed from are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY, being absent, takes no part in the foregoing decision.