* Writ of error refused March 16, 1927.
N. D. Naman, owner of 105 bales of cotton upon which the appealing insurance companies had issued their several policies of fire insurance, suffered $9,447.06 *Page 287 
damage thereto by fire about 8 or 8:30 o'clock on the night of June 23, 1920, 6 of the bales being at the time in the standard press warehouse of the Merchants' Compress Company in Houston and being burnt up; the other 99 bales being in two freight cars standing at the company's unloading wharves, or sheds, on its private industrial switch track at such standard press, and being only partially destroyed.
At Naman's suit against the insurance companies on these policies with an alternative plea against the defendant in error railway companies — the Galveston H. San Antonio and the Aransas Pass — for the damage to the 99 bales on the allegation that they had failed to consummate before the fire a contract for the shipment and delivery of this much of the cotton to him at such standard press, the court, sitting without a jury's aid, refused his alternative petition against the railway companies and gave him a recovery against the insurance companies on the policies for his total damage, at the same time denying the reciprocal claims of the insurance and railway companies against each other.
In this court the controversy is simply one between all the insurance companies in banc on the one hand and the two railroads in like array on the other as to which group should stand the loss from the fire, Naman having passed out of it with the judgment below.
The insurers, asserting no other rights than through subrogation under Naman, contend they are exempt solely because the railroads failed to complete their contract of carriage of the 99 bales with Naman prior to the fire, and that on two accounts they are entitled to take advantage of that fact, in that connection making these recitations in their brief:
"As the matter now stands in this court, the insurance companies have admitted liability to Naman, have paid his claim in full, and by contract as well as by operation of law have become subrogated to all of his claims against the defendant railways arising from their failure to complete the contract of carriage.
"In the meantime they have paid Naman's claim in full, and have received from Naman an assignment of his claim against the carriers."
The opposing litigants challenge both statements in so far as they relate to the claimed payment and assignment as being without support in the record, and examination discloses that they are, there being no pleading or proof as to either; what appears is that the insurers denied liability to Naman on the policies at the trial, and judgment thereon in his favor went against them nolens volens; having claimed no rights as such purchasers or assignees there, they cannot assert them here upon a payment and assignment that may have been made subsequent to the judgment appealed from, this court being bound by the state of the record as it comes to it.
So that the asserted subrogation is solely referable to the claimed failure of the railways to complete delivery of the 99 bales to Naman before the fire; if there was no such failure, then the coveted right did not arise; if there was, it might have, unless defeated by noncompliance on the insurers' part with some indispensable condition precedent.
We think it conclusively appears from the record that neither of these suggested essentials was met. In the first place, the trial court, in very full conclusions of both fact and law, found that there had been a delivery of the two cars containing the 99 bales by the railroads to Naman, or to the standard press of the Merchants' Compress Company, his agent for the purpose, for him, prior to the fire, and after most careful consideration of the record and statement of facts, our conclusion is that plaintiffs in error have made no successful attack upon that finding; in the second, the insurance companies had not paid any part of the loss at the time of judgment below. While these findings determine the appeal, brief comment upon them may not be amiss.
As concerns the second one, the insurers affirmatively pleaded (stating the matter as concretely applicable here) their right to subrogation as being contingent on their claiming that the fire was caused by the act or neglect of the carriers, and on their paying the loss, under this provision in the policies sued on:
"If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated, to the extent of such payment, to the rights of recovery by the insured for the loss resulting therefrom; and such rights shall be assigned to this company by the insured on receipt of such payment."
On the trial, no claim was made that the fire was caused by the act or neglect of the carrier, there was no evidence even tending to so show, no payment on the loss or assignment from Naman of his claim had been made when judgment was entered, and plaintiffs in error through their attorneys expressly disclaimed any right of recovery against the railway companies by virtue of this quoted provision; the trial court stated fact findings to this effect, none of which have been attacked here, wherefore they are binding upon this court.
In no event, as we apprehend, whether under the provisions of their contracts of insurance or under the general principles of equity, would the insurance companies be entitled to be put in Naman's shoes until they had paid something on the loss — and then only pro tanto — and being thus here shown to have paid nothing at all, they acquired no *Page 288 
such right, even were it conceded that the carriers had not delivered the cotton before the fire. Recurrence is now taken to that feature.
The contract of carriage of the 99 bales between Naman and the railway companies was simply a switching movement from one of the presses of the Merchants' Compress Company to another, that is, from its new press to its standard press, both within the city of Houston, the former being located on the Galveston, Harrisburg San Antonio Railway, the latter on the Aransas Pass; the Galveston, Harrisburg San Antonio on June 21, 1920, issued to Naman its two straight, open bills of lading of the uniform type for the cars, delivered them to its connecting carrier, the Aransas Pass, and the latter at 10 a. m. on June 23, 1920, spotted and placed them for unloading on the private industrial siding of the compress company at its standard press, alongside one of its unloading platforms, that being the destination named in the bills of lading; the Merchants' Compress Company was Naman's plenary agent in the matter, and its standard press, the destination plant, had at the time of the shipment on June 21, 1920, received advance notice by car number, initials, number of bales in each car, and the name of the shipper and consignee that these two cars had been loaded there and were en route from the new press to the standard press; Naman and the compress company also actually knew that the cars had been so spotted and placed for unloading, from and after that time had exclusive custody of and control over the cotton, inclusive of the right to at any moment remove it from cars, and failed to do so before the fire about 8:30 o'clock that night.
This résumé is but a restatement of the trial court's fact findings, and in no particular is it shown that any of them were not supported by the evidence. In view of them, especially those to the effect that Naman and his agent, the compress company, had actual notice of the arrival and placement for unloading of the two cars at the standard press at 10 a. m. on June 23, and exclusive control of them thereafter until the fire some ten hours later, this court deems the further and consequential finding that delivery of them by the carriers had been completed before that event inevitable; for this reason it is not thought necessary to go into the finely drawn distinctions of counsel with reference to various provisions in the bills of lading.
These conclusions require an affirmance of the judgment; that order has been entered.
Affirmed.
 On Motion for Rehearing.
In their motion for rehearing plaintiffs in error attack our finding that the record of the trial below failed to show that they had, prior to judgment there, admitted liability to Naman on the policies sued upon, had paid his claim in full, and had received from him an assignment of his claim against the carriers, citing pages 134, 135, of the transcript on file in this court as showing the contrary; the instrument thus appearing in the transcript purports to be an acknowledgment of such a payment and transfer executed on April 17, 1922, whereas the judgment in this cause was rendered in the trial court on October 18, 1921, and motion for new trial overruled thereon November 12, 1921. Obviously, in such circumstances, this court may not look to the paper thus injected more than five months after final action by the trial court into the transcript upon the appeal as properly reflecting any part of the proceedings below.
In this same connection it is further insisted that we erred in holding that the insurance companies, not having paid any part of Naman's loss at the time of judgment in the trial court, were not entitled to be then actually put into his shoes as concerned the two railroads on their subrogation claim, for the reason that, notwithstanding they had not then so paid, they were entitled to a conditional decree of subrogation against the carriers, effective whenever they might thereafter file with the clerk of the trial court proper evidence of payment on their part of Naman's recovery against them.
No such case was either adversely acted upon below or properly presented for reconsideration here; as our original opinion recites, they stood there until final judgment upon their denial of any liability to and refusal to pay Naman anything, and when the trial court, on a finding from the uncontroverted evidence that they had not up to that time paid him anything, denied generally their subrogation claims against the railways, they simply appealed the case as so made to this court, merely conplaining to that court of such denial upon the ground thus stated in their motion for new trial:
"For that each of the said insurance companies was shown to be entitled, upon payment, to subrogation to the rights of the plaintiff N. D. Naman against the said railway companies."
The italics are our own, emphasizing the correctness of our former conclusion that they did ground their right to subrogation upon their first paying the loss.
It goes without saying that the issues upon appeal may not be enlarged by the mere citation as facts of matters wholly dehors the record.
In any event, however, the question of an equitable assignment becomes immaterial under our other conclusion that the railway companies had completed their contract of carriage.
The motion for rehearing has been given careful consideration, but under the view *Page 289 
that our former disposition of the cause was correct, it has been overruled.
Overruled.