**QUEEN INS. CO. et al. v. GALVESTON, H. & S. A. RY. CO. et al.** (No. 794—4801.)

Commission of Appeals of Texas, Section B. June 25, 1927.

**1. Judgment ☞248—Insurers' right of recovery over against carrier must find support in pleadings.**

Right of insurance companies to recover over against carrier having possession of property at time of its destruction by fire must find support in pleadings.

**2. Insurance ☞606(1)—Fire insurers, pleading right to subrogation where fire loss was caused by negligence of another, held not entitled to recover where carrier was found not negligent.**

Insurance companies, claiming recovery over against railroad having possession of property at time of its destruction, *held* not entitled to judgment against railroad under plea to be subrogated to rights of plaintiff under provision of policy authorizing subrogation in case loss was caused by act or neglect of another, where both trial court and Court of Civil Appeals found against allegation that railroad companies were negligent or responsible for loss in any way.

**3. Insurance ☞606(1)—Insurers may not recover over against railroad on theory of equitable subrogation, under plea in avoidance of liability on policy.**

Insurance companies *held* not entitled to recovery over against railroads on theory of equitable subrogation, under plea that at time property was damaged by fire it was still in possession of delivering carrier, where such facts were not pleaded as basis for recovery on theory of equitable subrogation, but expressly in avoidance of liability on policy, and not as cause of action against railroad.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by N. D. Naman against the Queen Insurance Company and others, with an alternative plea against the Galveston, Harrisburg & San Antonio Railway Company and another. Judgment for plaintiff against the insurance companies was affirmed by the Court of Civil Appeals (290 S. W. 286), and they bring error. Affirmed.

Thompson, Knight, Baker & Harris, Locke, Locke, Stroud & Randolph, and Geo. S. Wright, all of Dallas, for plaintiffs in error.

Boyle, Ezell & Grover, of San Antonio, and Baker, Botts, Parker & Garwood, of Houston, for defendants in error.

SPEER, J. One N. D. Naman, the owner of 105 bales of cotton upon which plaintiff in error and other insurance companies carried policies of insurance, sued such insurance companies, and also the Galveston, Harrisburg & San Antonio Railway Company and the San Antonio & Aransas Pass Railway Company, carriers of the cotton, to recover damages for the loss of 6 bales and for injuries to the remaining 99 bales through fire while the cars containing the cotton were standing at the unloading wharves or sheds of the compress company, where the cotton was destined for delivery.

There was a trial before the court, who rendered judgment for the plaintiff against the insurance companies, but refused his alternative prayer for judgment against the railway companies. There was a prayer by the insurance companies for judgment over against the railroad companies for such sum as the plaintiff might recover against them, the insurance companies, upon their alleged right of subrogation. The trial court found against this plea over. This judgment was affirmed by the Court of Civil Appeals. 290 S. W. 286. It appears after the judgment was rendered in the trial court the insurance companies made settlement with the plaintiff and took his receipt and transfer of his cause of action against the railroad companies.

The writ of error has been granted to the insurance companies upon the issue of their right to recover over against the railroad companies the amount paid by them to the plaintiff.

There are some 30 or more assignments of error, but all of them are answered by our conclusion with reference to the scope of the pleadings of the insurance companies whereby they sought to recover upon the theory of subrogation.

[1] The right of plaintiffs in error to such recovery in any event must, of course, find support in their pleadings. That portion of their answer in which such support must be found, if at all, is as follows:

"For further and other answer herein, this defendant would show that if plaintiff holds its policy or policies such as described in plaintiff's petition, each said policy so held contained a stipulation and provision, in substance, as follows, to wit:

"'If this company shall claim that the fire was caused by the act or neglect of any person or corporation private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to the rights of recovery by the insured for the loss resulting therefrom, and such rights shall be assigned to this company by the insured on receipt of such payment.'

"This defendant would show that the loss by fire described in plaintiff's petition was due to the act and neglect of the defendant Galveston, Harrisburg & San Antonio Railway Company, and to the act and neglect of the defendant San Antonio & Aransas Pass Railway Company in so far as said loss and damage applied to the 99 bales of cotton described in plaintiff's petition; that said cotton was at the time of said loss in the possession and under the control of the said defendants, and each of them, on behalf of the plaintiff, as aforesaid, and as to said property it owed the duties, ob-

ligations, and liabilities of a carrier under the Constitution and laws of the state of Texas, and each of them negligently caused and permitted said property to be destroyed, and each of them failed and neglected to perform its duty as a carrier and to deliver said cotton and each part of the same to the plaintiff or his order in good order and condition as when received from him. This defendant would further show that, if it owes to plaintiff any sum for loss or damage as to the 99 bales of cotton sued for in plaintiff's petition, it is entitled to be subrogated to any and all claims of plaintiff against said defendants the Galveston, Harrisburg & San Antonio Railway Company and San Antonio & Aransas Pass Railway Company, and each of them, on payment of the loss to the extent such amount may be made. That this defendant is entitled, if a liability shall exist against it, to pay for loss and damage to said cotton, to be subrogated under the doctrine of equity to the claim of the plaintiff against said railroad companies defendant, severally, on the payment to the plaintiff and to the extent of such payment."

Upon which facts they prayed that, if the plaintiff shall recover any sum against them by reason of any loss to the 99 bales of cotton, they have judgment against the railway companies, and each of them, to the extent that they may be called upon to pay the plaintiff.

It is thus perfectly apparent that the insurance companies' right to subrogation thus far pleaded is dependent upon the stipulation quoted above, providing for such subrogation, and is, by the very terms of the stipulation, limited to those cases where the company shall claim that the fire was caused by the act or neglect of some other person or corporation. The clause containing this language is pleaded as the basis for such recovery over, and that such was contemplated by the pleader is made manifest by the allegations of fact immediately following this clause, to the effect that the loss by fire described in plaintiff's petition was due to the act and neglect of the railway companies, thus bringing the case within the stipulation pleaded.

[2] But there is nothing in the facts to support such a contention. Both courts have necessarily found against the allegation that the railroad companies, or either of them, through any act or negligence caused the fire, or were in any way responsible for it. So that, in no event, would the insurance companies be entitled to judgment against the railroad companies upon this plea to be subrogated to the rights of plaintiff.

Indeed, plaintiffs in error rather stress the general right of equitable subrogation. But, here again, their pleadings must determine their rights in this respect. Their answer and plea over contains the following:

"Said cotton was still in the legal and actual custody of said railroad company; and as bills of lading were outstanding therefor, said cotton had not been transferred to the custody of the compress company, and it had issued no receipt or memorandum therefor, and had not received the cotton. Moreover, the said bills of lading constituting the contract for transportation between the said N. D. Naman and the defendant railroad company contained a provision as follows: 'Property not removed by the party entitled to receive within 48 hours, exclusive of legal holidays, after notice of its arrival had been duly sent or given, may be kept in a car, depot, or place of delivery of the carrier subject to a reasonable charge for storage and to carrier's responsibility for warehouse ware only, or may be at the option of the carriers, removed to or stored in a public or licensed warehouse at the cost of the owner and there held at the owner's risk and without liability upon the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage.' As heretofore indicated, the said cotton had not been 'removed' from cars upon the side of the said San Antonio & Aransas Pass Railway Company, nor had 48 hours elapsed since notice of its arrival had been duly sent or given to the consignee. Wherefore there had been no delivery of the said cotton at the time of its loss and destruction by fire to the consignee; it was still in the possession, custody, and control of the defendant San Antonio & Aransas Pass Railway Company. By virtue of such possession, custody, and control, the defendant San Antonio & Aransas Pass Railway Company is liable for such loss and destruction as a common carrier; *because of the change of possession, custody, and control from the said N. D. Naman to the said San Antonio & Aransas Pass Railway Company, this policy became null and void with respect to such cotton, and did not operate to indemnify the plaintiff against such loss or destruction by fire.*" (Italics ours.)

Thereupon follows prayer to go hence as to plaintiffs' demand and for judgment over as heretofore set out.

[3] It is clear if plaintiffs in error have any just complaint it is upon their alleged right to a judgment over against the railroad companies at the time the case was tried below. They cannot base any rights to a reversal upon the payment of plaintiff's judgment and his assignment of the cause of action against the railroads to them, for these transactions occurred long after the trial. In the light of the fact that plaintiff suffered a judgment against him on his asserted right to recover against the railroads, the right of subrogation which plaintiffs in error acquired by the assignment was, indeed, a precarious one. As above indicated, their right in any event to a judgment is dependent primarily upon their pleadings. Now, they have pleaded facts showing that the cotton at the time it was damaged by fire had not been delivered to Naman, but was still in the possession of the delivering carrier, in which capacity it was liable. But the insurance companies have not pleaded these facts as a basis for a recovery by them upon the theory of equitable subrogation, but, rather, they have pleaded such facts of "change of such possession, cus-

tody, and control from the said N. D. Naman to the said San Antonio & Aransas Pass Railway Company" as to "make null and void the policy sued on." The facts thus pleaded were expressly in avoidance of liability on the policy, and not as a cause of action against the railroad companies. To treat the allegations of fact as a basis for affirmative recovery rather than a defense is to treat the matter thus set up for one purpose as applying to an entirely different purpose, and this the court will not do. Whitlock v. Castrow, 22 Tex. 113; Norris v. W. C. Belcher Land Mortgage Co., 98 Tex. 176, 82 S. W. 500, 83 S. W. 799.

The judgments of both courts are therefore correct, and should be affirmed, irrespective of the interesting question discussed by counsel of whether or not the cotton in controversy will be deemed to have been in the possession of the railroad companies, as carriers, until the expiration of the 48 hours allowed for removal.

We therefore recommend that the judgments of the Court of Civil Appeals and of the trial court be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed as recommended by the Commission of Appeals.