## UNITED FIREMEN'S INS. CO. v. THOMPSON.

### No. 12584.

Court of Civil Appeals of Texas. Galveston.
June 4, 1953.

Rehearing Denied June 25, 1953.

Fulbright, Crooker, Freeman & Bates, Eugene Cavin, Houston, for appellant.

Woodul, Arterbury & Wren, Carroll R. Graham and Howard S. Hoover, Houston, for appellee.

CODY, Justice.

This was a suit by appellant, the assignee of the owner of 214 bales of cotton which had moved in interstate commerce in two cars from Bakersfield, California, to the Ship Channel Compress Company, Inc., Houston, Texas, against appellee, the delivering railroad carrier, to recover the amount of the value of the loss caused to said cotton by fire, which, by agreement, was fixed at $2,758.80.

The case was tried without a jury upon facts stipulated by the parties. The facts so stipulated were in substance that the cotton was shipped under uniform bills of lading which provided in part:

"Contract Terms and Conditions
"Sec. 1. (a) The carrier * * * shall be liable as at common law for any loss * * * or damage * * * except as hereinafter provided.

. "(b) * * * The Carrier's liability shall be that of warehouseman, only, for loss, damage or delay caused by fire occurring after the expiration of the free time allowed by tariffs lawfully on file * * * after notice of the property at destination * * * has been duly sent or given, and after placement of the property for delivery at destination, or tender of delivery of the property to the party entitled to receive it * * *."

The parties further stipulated for purposes of the trial: That appellee placed the two cars containing said bales of cotton on the private railroad siding of the Compress Company during the night of January 27–28, 1949, and said cars were checked by employees of the Compress Company at 7:00 A.M. January 28, 1949. That free time allowed by applicable tariffs expired at 7:00 A.M., January 31, 1949. That the bills of lading were surrendered to the railroads on January 29, 1949. The warehouse caught on fire without any negligence on the part of appellee carrier, and spread to the two cars of cotton so adjacent thereto on January 30, 1949, causing the damage to the cotton sued for. That the seals on the cars had not been broken at the time.

The parties further stipulated: · That the private siding in question was used exclusively by the Compress Company. That the cotton here involved was handled like all other freight destined for the Compress Company, which was:

"1. The railroad car * * * would be spotted on the * * * Compress Company siding, uncoupled from the locomotive, and left standing on the siding.

"2. The car number * * * would be checked by employees of the * * * Compress Company.

"3. The seals on the car would be broken by employees of the Compress Company, and its contents unloaded by them into the warehouse.

"This sequence of events normally occurred in order. The first step was the only one participated in by the railroad or any of its agents or employees and after the completion of this step, the Railroad had no right to possession or control of the car, or its contents, until the car was released by the Compress Company. After the completion of the first step, the Compress Company was at liberty to carry out the other steps at its convenience. In the case of the two cars specifically involved herein the first two above described had been completed * * *."

The court rendered a take-nothing judgment against appellant.

Appellant has predicated its appeal upon a single point reading: "Error of the Trial Court in refusing to allow a recovery against the carrier even though it was liable for the loss under the specific contract terms and conditions of the bill of lading."

We have concluded that appellant's point should be overruled.

The Supreme Court of the United States has passed upon a provision of the uniform bill of lading prescribed for use in interstate commerce which is the legal equivalent of the provision set out in Section 1, Subsections (a) and (b), supra, though the wording of the provision in the bill of lading before the Supreme Court is not identical with that of bills of lading now in use in interstate commerce. Michigan Central Railroad Company v. Mark Owen & Company, 256 U.S. 427, 41 S.Ct. 554, 65 L.Ed. 1032. There, as here, the provision in question supposes that the property shipped on the uniform bill of lading may not be removed when it has reached its destination, and is made available for delivery; and two periods of time are therein provided for. First, there is a period that may extend for 48 hours after notice has been given to the consignee of arrival, and during which the property is available for delivery to the consignee. During this period of 48 hours, by contract of the parties to the bill of lading, the liability of the carrier is that of an insurer. Then, after the expiration of the period of said 48 hours, the liability of the carrier is that of a warehouseman.

■ Here the court held in effect that under the facts stipulated by the parties the act of the carrier in spotting the two cars on the private siding of the Compress Company transferred the custody and control, the possession of the bales of cotton to the Compress Company, and so constituted a delivery of the cotton to it. It is true that the same act of the carrier also constituted a delivery of the cars which contained the cotton to the Compress Company, to be held by said Company until it saw fit to move the cotton from the cars into its warehouse. This act by which the carrier delivered the cars with their contents into the custody of the Compress Company, until it saw fit to remove the cotton into its warehouse, constituted more than merely making the bales available for delivery. Such act under the stipulated facts was a delivery of the bales by the carrier to the consignee. See Queen Insurance Co. v. Galveston H. & S. A. R. Co., Tex.Civ.App., 290 S.W. 286, decided by our Court through Justice Graves, and affirmed by the Commission of Appeals in 296 S.W. 484, the motion for rehearing reported in 3 S.W.2d 419. See also Levers v. Atchison, T. & S. F. R. Co., 22 N. Mex. 599, 166 P. 1178, L.R.A.1918A, 294; Rice & Lockwood Lumber Co. v. Boston & Maine R. Co., 308 Mass. 101, 31 N.E.2d 219; Southern Advance Bag & Paper Co., Inc., v. Terminal R. Ass'n of St. Louis, Mo.App., 171 S.W.2d 107.

The Supreme Court of the United States held in the Michigan Central case, supra, that the property there involved was not delivered by the carrier, but that merely access had been given to the consignee to remove the property, and for the purpose of removal of the property 48 hours were given by the contract contained in said provision of the uniform bill of lading.

The facts in that case included the fact that the car was spotted on a *public track,* and the car with the property therein contained accordingly remained in the possession and under the control of the railway company,—as much as if the property had been stored in its freight depot and kept available for removal by the consignee.

■ Appellant appears to be under the impression that the court held in the Michigan Central case that if the property was not removed from the carrier's car during the free time (I.E. within the first 48 hours, not counting holidays), the carrier was liable therefor as an insurer; and that thereafter, so long as the property remained in the carrier's car, the carrier was liable therefor as a warehouseman. The court did not so hold. But there, since the court found there had been no delivery of the property at the time it was damaged or lost, it followed that the carrier was necessarily liable either as an insurer or as warehouseman. But where injury to or loss of property occurs after the carrier has surrendered dominion thereover to the consignee, the carrier cannot be held liable at all.

The Supreme Court of Louisiana, in Red River Cotton Oil Co. v. Texas & P. Ry. Co., 216 La. 519, 44 So.2d 101, in which the material facts are not different from those here presented, held that there had been no delivery of the property, and held the carrier liable as an insurer, undertaking to base its holding on the Michigan Central case. However, the holding was by a divided court, and we cannot agree with the majority opinion.

The judgment is affirmed.

MONTEITH, C. J., not sitting.

On Appellant's Motion for Rehearing.

We agree that the holding of the Supreme Court of the United States in Michigan Central Railroad Company v. Mark Owen & Company, 256 U.S. 427, 41 S.Ct. 554, 65 L.Ed. 1032, as to the meaning of the language used in uniform bills of lading must control where there has been no delivery of the shipment, and

the goods remain in the possession of and under the control of the carrier. But when possession of the goods has been delivered to the consignee, the carrier cannot be held liable as an insurer. In the cited case the Supreme Court expressly held in reversing the Supreme Court of Illinois that the State court had erred in its holding that "the bill of lading provides for property 'not removed'—not to property 'delivered' or 'not delivered,' * * *." The Court went on to state of the distinction which the State court had sought to make "The answer [i. e. of the State court] puts too much emphasis upon the distinction between property removed and property delivered. The property here was not delivered * * *." 256 U.S. at pages 431, 432, 41 S.Ct. at page 556.

Motion for rehearing refused.

MONTEITH, C. J., not sitting.