**TEXAS & NEW ORLEANS R. CO.,**
Appellant,

v.

**Claude L. SPARKS et al., Appellees.**

No. 15068.

Court of Civil Appeals of Texas.

Dallas.

April 13, 1956.

Rehearing Denied June 8, 1956

Robertson, Jackson, Payne, Lancaster & Walker, and D. L. Case, Dallas, for appellant.

Thompson, Knight, Wright & Simmons, and William H. Neary, Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from two judgments in two consolidated suits, one filed by appellee Producers Cotton Oil Company, the other by appellee Claude L. Sparks. Appellant Texas & New Orleans Railroad Company was defendant in both suits. Judgment was rendered in favor of appellee Producers Cotton Oil Company, after a jury verdict, for $23,934.84, and in favor of appellee Claude L. Sparks on an instructed verdict, for $26,280 being the agreed values respectively of two cars of cotton destroyed in a common fire on January 31, 1951.

Appellant was the terminal line haul carrier in each instance. However, both cars were turned over to the Galveston, Houston & Henderson R. Co., switching agent, whose tracks are adjacent to the Cotton Concentration Company Plant No. 35, where the cotton was to be delivered.

Appellees successfully contended that at the time of the fire the cotton was still legally in the possession of the carrier, hence the fire loss should fall on the carrier. Appellant on the other hand takes the position that delivery to appellees had been completed, that the cars had been either actually or constructively placed in a position accessible for unloading by appellees, hence appellees should bear the loss.

Appellant has listed twenty-five points on appeal. We shall not reproduce them verbatim but shall summarize them as follows:

(1) *As to both appellees*: (a) The uncontroverted evidence, or at least the overwhelming weight of the evidence, established that at the time of the fire, the cotton had been delivered; and (b) it was immaterial whether the 48 hours free time allowed for unloading had expired.

(2) *As to appellee Producers Cotton Oil Co.*: (a) There was no evidence, or at least insufficient evidence, that free time had not expired, but on the contrary the overwhelming evidence showed that free time had expired; (b) there was no evidence, or at least insufficient evidence, to support the jury's finding that the car in question was not in an accessible position for unloading on January 29, 1951, and said finding is contrary to the overwhelming weight of the evidence; the said evidence showing that said car was constructively placed for unloading; (c) the court erred in overruling appellant's objections to testimony tending to show that cars placed on Track No. 2 or other similar tracks had not been considered placed for door to door unloading, and had not been subject to demurrage charges; and (d) the court erred in refusing to submit appellant's requested issue inquiring whether, at the time of the fire, appellant had already released the car in question to appellee Producers Cotton Oil Company.

(3) *As to appellee Claude L. Sparks*: The court erred in refusing to submit appellant's requested issue inquiring whether, at the time of the fire, appellant had already released the car in question to appellee Claude L. Sparks.

Many of the material facts are stipulated or are undisputed. Both cars of cotton were shipped on "shippers-order-notify" bills of lading, delivery by appellant to be made to Plant No. 35 of Cotton Concentration Company in Galveston, Texas. Im-

mediately adjacent to the unloading platform of Plant No. 35 is railroad Track No. 1. Second track removed from the platform is Track No. 2. It is possible to place a car on Track No. 2 door to door with a car on Track No. 1, and unload the car on Track No. 2 through the car on Track No. 1 onto the unloading platform of Plant No. 35.

The parties entered into the following stipulations material to the classification of the two tracks:

"It is stipulated that Cotton Concentration Company, Inc., is a sublessee of the Southern Compress & Warehouse Company, Inc., that Southern Compress & Warehouse Company, Inc., sub-lessor, is lessee of the Galveston, Houston & Henderson Railroad Company under a written lease agreement executed on or about May 31, 1944 * * * that neither Track No. 1 nor Track No. 2, as hereinabove described, is located on property covered by the lease to Southern Compress & Warehouse Company, Inc., but both of said tracks are owned by Galveston, Houston & Henderson Railroad Company and are located on land owned and used by Galveston, Houston & Henderson Railroad Company for right of way. * * * It is stipulated. * * * that under the terms of such lease the Galveston, Houston & Henderson Railroad Company, as well as other Railroads, are not by the express terms of such contract precluded from using Tracks Nos. 1 and 2, for purposes other than handling the business of the Compress. It is further stipulated that Tracks Nos. 1 and 2 are not that class of track covered by the following definition contained in Note 1, on page 39, of Freight Tariff No. 4 Z: 'A Private Track is a track outside of this railroad's right of way, yard and terminals, and of which this railroad does not own either rails, ties, roadbed or right of way; or a track or portion of a track owned or operated by this railroad and assigned to the purpose of its user through a written lease or written agreement, in which case the written agreement will be considered as equivalent to ownership. When the same private track or portion thereof is used jointly by two or more parties, it will be considered the private track of each joint user; provided, that when such track is covered by a lease or written agreement with this railroad, the written consent to such joint use has first been obtained from this railroad.'"

The Producers Cotton Oil Company car, shipped from Marana, Arizona, was received by the switching agent at 2:10 o'clock P.M. January 28, 1951 and was placed on Track No. 2 as of 7:00 o'clock A.M. January 29, 1951. Later, but before 7:00 o'clock A.M. January 30, 1951, it was placed in position for unloading on Track No. 1, where it remained until the fire at approximately 11:00 o'clock P.M. January 31, 1951. Consignee had been notified of the arrival of the car in Galveston, Texas, and had surrendered the bill of lading to appellant prior to placement of the car on Track No. 2.

The Sparks car, shipped from Bakersfield, California, was received by the Galveston, Houston & Henderson Railroad Company, switching agent, at 10:30 o'clock P.M. January 29, 1951, and at 4:30 o'clock A.M. January 31, 1951, was placed in position for unloading on Track No. 1, where it remained until the fire at approximately 11:00 o'clock P.M. January 31, 1951. Consignee had been notified of the arrival of the car in Galveston, and had surrendered the bill of lading to appellant prior to placement of the car on Track No. 1.

Freight Tariff 4–Z, Rule 3, sec. 1–D and note 1 (page 42) in effect at the time provide: "* * * on cars to be delivered on other-than-public-delivery tracks, time will be computed from the first 7:00 A.M. after actual or constructive placement on such tracks. * * * Note 1.—'Actual Placement' is made when a car is placed in an accessible position for loading or unloading or at a point previously designated by the consignor or consignee. If such plac-

ing is prevented from any cause attributable to consignor or consignee and car is placed on the private or other-than-public-delivery tracks serving the consignor or consignee, it shall be considered constructively placed without notice."

Freight Tariff 4–Z, Rule 2, sec. A–1 (page 40) provides: "* * * forty-eight hours' (two days) free time will be allowed to partly or completely load, to partly or completely unload, or to partly unload and partly reload, all commodities * * *."

Each of the shipments was transported under a "Uniform Order Bill of Lading," containing this provision: "(b) * * * The carrier's liability shall be that of warehouseman only for loss, damage, or delay caused by fire occurring after the expiration of the free time allowed by tariffs lawfully on file (such free time to be computed as therein provided) after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given and after placement of the property for delivery at destination, or tender of delivery of the property to the party entitled to receive it, has been made * * *."

Appellant candidly admits that there are two lines of decisions in apparent conflict with each other dealing with the question of when delivery is accomplished—accomplished, that is, in the sense that legal possession of the merchandise shipped and liability for its loss or damage passes from the carrier to the consignee.

One line of decisions, relied on by appellees, holds that delivery is not accomplished until the 48 hours free time allowed under the tariff has expired, unless the goods have been removed from the car within the 48 hours. Michigan Central R. Co. v. Mark Owen & Co., 256 U.S. 427, 41 S.Ct. 554, 65 L.Ed. 1032; Red River Cotton Oil Co. v. Texas & Pacific Ry. Co., 216 La. 519, 44 So.2d 101, certiorari denied 339 U.S. 953, 70 S.Ct. 841, 94 L.Ed. 1366; Gary Bros. & Gaffke Co. v. Chicago, etc., Ry. Co., 49 Mont. 524, 143 P. 955.

The other line of decisions is relied on by appellant to support its contention that delivery has been accomplished when a car has been placed in position accessible for unloading by the consignee, regardless of whether free time has expired. United Firemen's Ins. Co. v. Thompson, Tex.Civ. App., 259 S.W.2d 612, ref. n. r. e.; Texas & N. O. R. Co. v. H. & C. Newman, Inc., Tex.Civ.App., 273 S.W. 335; Loveless Mfg. Co. v. Roadway Express, D.C., 104 F.Supp. 809.

As these two shipments involve interstate commerce, we are of the opinion that the holding in Michigan Central R. Co. v. Mark Owen & Co., 256 U.S. 427, 41 S.Ct. 554, 555, 65 L.Ed. 1032, must control our decision. The facts in that case seem to us to be more favorable to appellant's contention than the facts in the instant case. In the Mark Owen case a shipment of grapes in a car placed on a public delivery track was accepted by the consignee, the car seals were broken, and part of the grapes unloaded. A loss or damage of the remaining grapes occurred before they were unloaded. Nevertheless the court held the carrier liable for the loss of the unloaded grapes for the reason that the property had not been delivered, saying:

"The point of the controversies has been, and is, as to the relation of the carrier to a shipment within 48 hours after notice of its arrival has been duly sent or given, and the contentions upon the point are in sharp antagonism. That of respondent is that the railroad company during the 48 hours is responsible as a carrier, this relation not terminating until the expiration of that time. The contention of the railroad company is contra, and that it, the company, is neither liable as a carrier or warehouseman. Not as carrier because the shipment had been delivered and accepted—not as warehouseman because no negligence has been proved against it. * * * *The property here was not delivered; access was only given to it that it might be removed, and 48 hours were given for the purpose.* Pending that time it

was within the custody of the railroad company, the company having the same relation to it that the company acquired by its receipt and had during its transportation. The bill of lading is definite, as we have pointed out, in its provisions and of the time at which responsibility of the company shall be that of warehouseman, and by necessary implication, therefore, until that responsibility attaches, that of carrier exists." (Emphasis supplied.)

In our opinion the holding in United Firemen's Ins. Co. v. Thompson, 259 S.W.2d 612, ref. n. r. e., relied on by appellant, is not applicable here. In the Thompson case it was stipulated that *the railroad cars in question were placed on a private siding of the Compress Company, which siding was used exclusively by the Compress Company*. It was held that under such circumstances the placement of the cars constituted delivery.

In the case now before us, the circumstances are quite different. Appellant may be correct in saying that neither Track No. 1 nor Track No. 2 is a public delivery track. Appellant calls them industrial tracks. In any event they certainly cannot be classified as private tracks of Cotton Concentration Company, the receiving agent.

As shown by the stipulation entered into between the parties, both Track No. 1 and Track No. 2 are owned by the Galveston, Houston & Henderson Railroad Company, delivering agent for appellant, and both tracks are located on land owned and used by said railroad for right of way. The railroad also owns the land on which Plant No. 35 is located, Cotton Concentration Company being a sub-lessee. The written lease, which is in evidence, does not assign the two tracks to the lessee, or sub-lessee. On the contrary, by its express terms the owner railroad and other railroads are not precluded from using the tracks for purposes other than handling the business of the lessee, or sub-lessee. Moreover, the parties agreed in their stipulation, as already quoted, that the two tracks are not private tracks as defined by the applicable Tariffs.

From the above summary of certain stipulated facts it is apparent that we need not be concerned here with the rule applicable to cars placed on a private track of a consignee or its receiving agent—a track used exclusively by said consignee, or its receiving agent, as was the fact situation in the Thompson case. Whatever the proper rule may be as to private tracks, we believe that such rule is inapplicable here.

We overrule appellant's points Nos. 1 to 5, inclusive, and points Nos. 24 and 25.

We come now to consideration of appellant's contention that as to the Producers Cotton Oil Company car, there was no evidence, or at least insufficient evidence, to show that free time had not expired, but on the contrary the overwhelming weight and degree of competent evidence established that the car had been either actually or constructively placed in a position accessible for unloading more than 48 hours prior to the fire, hence free time had expired.

The Producers car was placed on Track No. 2 as of 7:00 A.M. January 29, 1951. Appellant contends that it was located door to door with a car on Track No. 1. If free time began running as of 7:00 A.M. January 29, 1951, the 48 hours free time had expired as appellant asserts, at the time of the fire at 11:00 P.M. January 31, 1951.

But the jury found that the car in question was not in accessible position for unloading on Track No. 2 on January 29, 1951. This finding, if properly supported by the evidence, is fatal to appellant's claim as to an "actual placement" which would start the running of free time, for the applicable tariff requires that for "actual placement," a car must be placed in a position accessible for unloading.

In our opinion there is sufficient evidence in the record to support the jury finding. Though one of appellant's witnesses testified on direct examination that the car on Track No. 2 was placed door

to door with a car on Track No. 1 for unloading, on cross-examination he gave testimony which must be described as inconsistent, if not in conflict, with his direct testimony. This same witness also stated that the Cotton Concentration Company's plants were not built for door to door car unloading and that he had never seen door to door unloading at any of them.

One of appellees' witnesses testified that in his thirty-two years service with Cotton Concentration Company, cars had never been unloaded door to door. Cars on Track No. 2, regardless of whether placed door to door, were not considered in position accessible for unloading. Even if they were placed door to door, they were not considered accessible for unloading because of the hazard and the increased expense. This witness also testified that according to the records of the Cotton Concentration Company, the Producers Cotton Oil Company car first appeared on the Company's demurrage record on January 30, 1951. This was not until the car had been switched from Track No. 2 to Track No. 1. There was other evidence tending to support the jury's finding, but we shall not go further into detail.

We find no evidence of probative force in the record that the Producers Cotton Oil car was placed on Track No. 2 on January 29, 1951, instead of on Track No. 1, because of any fault attributable to the Producers Cotton Oil Company or Cotton Concentration Company. In the absence of such evidence there can be no constructive placement, as contended by appellant. We overrule appellant's points Nos. 6 to 12, inclusive.

Appellant complains of the admission in several instances of testimony in behalf of appellees, tending to show that cars placed on Track No. 2 at Plant No. 35, also on tracks similarly situated at other plants, were not considered placed in position accessible for unloading. The record shows that appellant introduced testimony to the effect that a car on a track similar to Track No. 2, door to door with a car on a track similar to Track No. 1, was considered to be in an accessible position for unloading, and that such procedure for unloading was customarily followed at cotton compresses in Galveston in 1951. Under the circumstances it was proper for appellees, by way of rebuttal, to produce the testimony to which appellant objected. We overrule appellant's points Nos. 13 to 23, inclusive.

The judgment of the trial court is affirmed.